(25 Misc. Rep. 161.)

### NORMAN v. REUTHER.

(Supreme Court, Appellate Term. November 10, 1898.)

1. BROKERS—RIGHT TO COMPENSATION—BURDEN OF PROOF.
    In an action by a real-estate broker for compensation in procuring an exchange of property for defendant, the burden is on plaintiff to show that he had procured a valid contract for exchange.

2. SAME—PERFORMANCE OF CONTRACT.
    Defendant agreed to pay plaintiff a certain sum if he would secure a certain farm in exchange for defendant's property. He secured a contract for exchange, signed by one who had no title to the farm, but claimed that after signing it he had made a contract for the purchase of the farm. This latter contract was not produced, and the person from whom it was claimed to have been secured was not shown to be the owner of the farm. *Held,* that plaintiff was not entitled to compensation.

3. SAME—AGENCY FOR BOTH PARTIES.
    A real-estate broker, engaged by defendant to secure an exchange of property, who, unknown to defendant, is also agent for the other contracting party, is not entitled to compensation from defendant.

4. SAME—ACTIONS—DEFENSES—PLEADING.
    In an action by a real-estate broker for commissions in procuring an exchange of property, a defense that he was also agent for the other party to the exchange may be made under an answer denying the performance of the services.

Appeal from municipal court, borough of Manhattan, Seventh district.

Action by William Watson Norman against Louise Hutschen Reuther. Judgment for plaintiff, and defendant appeals. Reversed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

George H. Hart, for appellant.
Henry F. Lippold, for respondent.

BEEKMAN, P. J.　The plaintiff in his complaint alleges that the defendant entered into an agreement in writing with him in the following terms:

"18th November, 1897.

"If Wm. Watson Norman, of 14 E. 42nd St., secures for me the Kemp farm, on Central Ave., Yonkers, in exchange for my flat in 98th St., city of New York, and part cash or otherwise, I hereby agree to pay him for his services the sum of five hundred dollars.　　　　　　Louise Hutschen Reuther."

He then avers that in pursuance of his engagement he exerted his best efforts to secure, and did secure, for the defendant, the said Kemp farm, in exchange for the flat in Ninety-Eighth street, by procuring for her "a valid, legal contract in writing" for the exchange in question, and the conveyance to her of said farm.　Claiming that he has thus satisfied the condition upon which his right to receive the compensation for his services agreed upon was predicated, he has brought this action for its recovery.　The defendant in her answer denies the rendition of the services, and also affirmatively sets up fraud and imposition practiced upon her by the plaintiff, both with respect to the contract of employment, and the so-called contract of exchange referred to by the plaintiff as having been obtained by him.　Much evidence was taken on this line of defense, the effect of which it is unnecessary for us to discuss, as we are of the opinion that the judgment in favor of the plaintiff should be reversed on the ground that he has failed to perform the service for which the defendant agreed to pay him, and also on another ground, which will be subsequently stated.

The rule is well settled that the plaintiff's recovery must be secundum allegata et probata, and the burden therefore rested upon him of establishing the fact that he had procured for the defendant a valid contract for the exchange of the properties in question, under which she could compel performance.　This necessarily implied that the person with whom she contracted was one who was able to perform.　It would be a monstrous proposition to advance that, merely because the broker had obtained some one who was willing to and who did sign a contract for the exchange or sale of property, he had earned his commission, although the party so contracting had no interest in the property, and was in a legal sense a stranger to it.　Especially is this so where the broker himself knew of the fact, and failed to disclose it to his principal, as was the case here.　It appears that the contract in this case purported to be made between the defendant and one Leopold Goldhammer; the name of the latter being signed by one Weiss, as agent or attorney in fact.　It is conceded that Goldhammer had no title to the Kemp farm at the time, nor has he since become the owner.　He was examined as a witness on behalf of the plaintiff, but his testimony amounted to little more than that he was engaged in the real-estate business, that Mr. Weiss was his agent, that he was told by him of the making of this contract, and that he (Weiss) had authority from him to do so.　Apparently he knew very little about the matter, beyond the fact that he had no title whatsoever to the property he was assuming to transfer. Weiss testifies that, after this contract was signed, he in turn en-

tered into another for the purchase of the farm, but his testimony is quite indefinite with respect to the names of the contracting parties and other details. The contract itself was not produced. On cross-examination he gave the following evidence:

"Q. Who was the owner of Kemp's farm at the time? A. I don't know. I made the contract, or at least the contract was to be signed by Mr. ———; by Mr. ———. What is your name [addressing the attorney for the plaintiff]? Plaintiff's Counsel: Lippold. Witness: By Mr. Lippold. Q. My question was, if you knew that Mr. Lippold was the owner of the property? A. As the owner of the property. Q. Did you succeed in making a contract? A. Yes; we came to an understanding. Q. Did you ever make a written contract? A. Yes; I have seen the written contract,—signed it. I do remember that it was signed by me. By Plaintiff's Counsel: Q. That contract was not carried out? A. No. Q. Why? A. Mr. Goldhammer didn't want the farm unless he could exchange right away."

On his re-direct examination he testified as follows:

"Q. Had Lippold and you any contract in writing, signed and executed and delivered, for the purchase of that property, before the execution of this Exhibit C [the contract with the defendant]? A. Well, for the farm? Q. Yes. A. Supposed to; yes. Q. Supposed to; but did you? A. Yes. Q. In writing? A. In writing. Q. Signed? A. He sent me a copy that was signed. Q. Yes? A. I did send them up to have them signed. I signed it."

The witness, it will be recalled, testified on his direct examination that the alleged contract was made after the one signed by the defendant. Considering the character of the testimony given by him, no other conclusion seems reasonable than that there was no such contract ever made between him and Lippold. But, even if it had been, it is conceded that Lippold was not the owner, though it is claimed that he was the attorney in fact of one Schmidt, and that he represented the latter in the transaction. There is no evidence, however, that Schmidt was the owner, or, if he was, to what extent Lippold was authorized to represent him. Lippold himself was not examined as a witness. In fact, there is not the slightest evidence in the case tending to show who the owner of this property was, or that Goldhammer was ever in a position to make good his engagement under the contract with the defendant. On the contrary, the proof is all the other way. The facility with which the arrangement (whatever it was) with Lippold was abandoned after it was discovered that the defendant would not carry out the contract signed by her intensifies the conviction that the agreement with him was not intended to be, and was not, a binding contract. Without undertaking to call attention to other portions of the evidence, which is very voluminous, sufficient has been shown to make it plain that the plaintiff never procured such a contract for the defendant as the agreement between them contemplated. Indeed, the plaintiff himself testified that, when he informed the defendant with respect to the terms of the exchange, she told him "to arrange for the owner to have the contract made out for the purchase of the farm, or the exchange of farm for the flat and the $2,000." It is manifest that he did not do so.

The remaining question in the case which calls for consideration is the legal effect upon the plaintiff's right of recovery of an arrangement which he himself testifies was made by him with one Nanheim.

Nanheim was also a real-estate broker, claiming to represent the owner of the Kemp farm in the matter of the sale or exchange of that property, under the authority of Lippold, who, as we have seen, also claimed to be the attorney in fact of such owner. The plaintiff not only shows that his negotiations were mainly with Nanheim, but he also testifies that he was acting for the owner of the farm, "jointly with Nanheim," and that he was to be paid a commission "for the sale of the Kemp farm by the owner of it." It nowhere appears that the defendant knew of or assented to this double agency on the part of the plaintiff, or that she knew he was also to receive a commission from the owner of the farm. The plaintiff was the defendant's agent, and upon him was devolved the duty of conducting the negotiations which were to lead to the exchange in question. The relation was one which involved the element of personal trust and confidence, and she was entitled to expect him to serve her alone in the matter; to make for her the best bargain he could; in short, to act for her with the utmost good faith. It has been repeatedly held that this duty is not performed where there is a secret agreement with the other side to render service, or for a commission upon the transaction, and that, where such an agreement has been made, it bars any recovery by the agent for his services. Carman v. Beach, 63 N. Y. 97, 100; Murray v. Beard, 102 N. Y. 505, 508, 7 N. E. 553; Empire State Ins. Co. v. American Cent. Ins. Co., 138 N. Y. 446, 449, 34 N. E. 200. While it is true that this fact has not been affirmatively pleaded, it seems to have been held that proof of it may be made where the answer denies the performance of the services, as it does in the case at bar. Chatfield v. Simonson, 92 N. Y. 209.

We think that on both of the grounds discussed the plaintiff was not entitled to recover, and that the judgment should be reversed.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.