E. S. ORMSBY, Appellee, v. W. F. GRAHAM, J. L. GRAHAM, AND W. J. GRAHAM, Appellants; NANCY A. JEWETT AND GEO. J. CONSIGNEY, Appellees.

**Specific Performance:** SUBSTITUTION OF LOST RECORDS. In case of 1 a lost record a judge of a district court has power, under Code, section 4127, to order the evidence retaken and substituted where the appellants have been diligent and the witnesses are accessible.

**Same.** Where a motion to substitute a lost record is made within 2 sixty days from the date of judgment, and upon order of court the evidence is retaken after the expiration of the sixty days, an order substituting the same as of the date of the motion is correct.

**Specific Performance:** WHEN WILL NOT LIE. Where the plaintiff, 3 in an action for specific performance of a contract to convey land, knew at the time the contract was made that the vendors did not have title to the land, and coupled with a tender of the purchase price a demand for a good marketable title, he cannot have specific performance of the contract, though he may recover his damages in a law action.

**Specific Performance:** DEFENSES. In an action for specific per- 4 formance to convey land, the sufficiency of the defense that the vendor is the head of a family having a homestead right in the land and that his wife did not join in or consent to the contract, will not be first inquired into on appeal.

Specific Performance:   WHEN DENIED. A court of equity will not enforce specific performance where its decree would compli-cate the title and operate oppressively to the vendors.

Agency:  COMMISSIONS. Where an agent's commission contract re-quires him to draw the papers necessary to a sale and author-izes a retention of his commission from the cash payment, there must be a completed sale mutually binding the vendor and ven-dee before the agent is entitled to his commission.

Same. Evidence considered and held to show no completed sale for which the agent was entitled to a commission under his contract.

Tender. A tender is not in itself a part performance of a contract to sell land which will take it out of the statute of frauds.

Agency: PAYMENT BY CHECK. An agent cannot bind his principal, unless expressly authorized, by accepting a check in part pay-ment of the purchase price of land.

*Appeal from Palo Alto District Court.*—HON. A. D. BAILIE, Judge.

FRIDAY, FEBRUARY 19, 1904.

THE opinion states the case. *Reversed* as to defendant Consigney, but otherwise *affirmed.*

*C. E. Cohoon* and *Clarke & Cohenour* for appellants.

*E. A. Morling* for appellees Ormby and Consigney.

No appearance for appellee Jewett.

WEAVER, J.—Plaintiff brings suit in equity for the spe-cific performance of an alleged contract for the sale of land. He alleges that the defendants Graham are the real owners, and defendant Jewett the holder of the legal title of the land; and that the contract sought to be enforced was made by the defendant Consigney as agent of the Grahams. Mrs. Jewett answers, admitting that she holds the title to the lands and is the owner thereof, subject only to certain leases to the Grahams, and to a contract by which the latter have an exclusive agency to sell the same and retain as their compen-sation all excess over a specified amount. She denies that she ever authorized Consigney to sell the land, or gave the

Grahams any authority to confer upon him any such agency, or that plaintiff has ever tendered her the amount to which she is entitled under her agreement with the Grahams, or any other amount. The defendant Consigney files an answer, in which he "admits all the allegations of the petition, and joins therein, and avers the same to be true." He then proceeds, "by way of cross-bill," to set us substantially the same allegations contained in the petition, and asks for judgment against the Grahams for $3,380, the amount of commissions he would have received had the sale been consummated. The defendants Graham moved to strike the name of Consigney from the list of defendants, on the ground that he was improperly joined therein, also to strike the cross-petition, because the said Consigney was improperly impleaded in the action, and that the allegations made and relief sought are not germane to the original petition. Defendants also moved that the issue upon the cross-bill be transferred to the law calendar for trial to a jury. These motions were severally denied, and error is assigned on said rulings. By their answers to the petition and cross-bill the Grahams deny making the alleged contract of agency, and assert that a provision interlined therein, giving Consigney the excess of the selling price over $15,600, was inserted, without authority, after the paper was executed and delivered. They also deny that any sale was in fact made, and plead the statute of frauds. They further say that they are not the owners of the land, and have no power or authority to convey the title or cause it to be conveyed, and that plaintiff knew that fact when he made the alleged contract with Consigney. They also allege homestead rights in the land, and allege that the contract sought to be enforced was never signed by their wives, and is therefore void. Upon trial to the court decree was entered under date of December 20, 1901, dismissing plaintiff's bill, but entering a judgment against the Grahams in favor of Consigney as prayed in the cross-bill. At the close of the trial the evidence was duly certified by the court and official stenographer, and filed in the office of the clerk. The defendants

Graham and the plaintiff Ormsby have both appealed, but said defendants, having first perfected their appeal, will be designated as appellants in this opinion. After taking their appeal, the Grahams in due time ordered a transcript of the evidence to be made and filed as required by law, when it was discovered that the notes and record of the testimony of the witnesses had been lost. Due search and inquiry failing to reveal said records, the appellants, within the period of six months from the date of the judgment, filed an application for an order to restore the records by retaking and substituting the evidence. The application, being presented first to Hon. W. B. Quarton, one of the judges of the district court, was by him directed to be submitted to Hon. A. D. Bailie, the judge before whom the case had been tried. After due notice a hearing was had before the last named judge within six months from the date of the judgment appealed from, and the matter taken under advisement. Thereafter, and after the expiration of said six-months period, the application was sustained, and the evidence was retaken in open court, plaintiffs and defendants appearing and taking part in the examination. The evidence thus taken was duly certified, and ordered filed as of the date June 17, 1901. The defendant Consigney appeals from the rulings and orders adverse to him made in these proceedings to substitute the record. He has also sued out a writ of *Certiorari* from this court to have said proceedings declared irregular and void. The arguments of counsel seem to be framed on the theory that the main case, with its cross-appeals and the *certiorari* proceedings, are to be considered and disposed of together, and we shall pursue that course.

I. Was there any error in ordering a substitution of the lost record? The appellants had done all that in law or reason could be required at their hands. The judgment having been entered against them, they took care to have the record duly certified and filed with the clerk, the proper custodian. Their appeal was taken in due time as provided by law. They made timely application

I. SUBSTITUTION of lost records.

for a transcript, and found the only record from which such transcript could be made had been lost. When search and inquiry proved fruitless, the defendants were in a position where, without fault upon their part, they were about to be wholly deprived of the benefits of the appeal, to which the law gave them an undoubted right, unless an adequate remedy could be had through the courts. It has often been held that this court will not assume jurisdiction to order a correction of a record. *Reynolds v. Sutliff,* 71 Iowa, 549; *De Wolfe v. Taylor,* 71 Iowa, 648; *Barber v. Scott,* 92 Iowa, 57. This court having no jurisdiction, what, then, is the power of the district court in the premises? That it has power to deal with such cases has been recognized by us in a manner more or less direct on several occasions. We have held that, independent of the statute, courts have inherent power to restore records lost or destroyed. *Gammon v. Kundson,* 46 Iowa, 455. We have also long followed the practice of allowing continuances in this court to enable parties to obtain a correction or perfection of a record in the trial court. *Barber v. Scott, supra.* That this power extends to the restoration of pleadings and evidence which have once had existence and have been lost, see *Loomis v. McKenzie,* 48 Iowa, 416; *Steiner v. Steiner,* 49 Iowa, 70. By the statute upon procedure in the Supreme Court (Code, section 4127) it is provided that "the lower court, the Supreme Court, or a judge of either court may make any necessary orders to secure a perfect record or transcript thereof upon a showing by affidavit or otherwise and upon such notice as it or he may prescribe." Manifestly, this provision is not to be construed as empowering either of these courts to control, amend, or perfect the records of the other, but as authorizing each within its own jurisdiction to exercise such power as may be appropriate and necessary to enable the parties to obtain a perfect record and transcript. It is suggested in argument that the true remedy in a case of this kind is to grant a new trial, because the substitution of evidence can be done but imperfectly at best, and results in

the submission of the appeal upon another record than the one which was before the trial court. Without deciding that a new trial may not be had under some circumstances on account of loss of records, it is sufficient to say that the rule of the *Loomis* and *Steiner Cases* affords a sufficient remedy where the witnesses are all still accessible and it is probable that the testimony can be reproduced with a reasonable degree of faithfulness to the original. We see nothing in this case which affords good reason for refusing to follow the precedents referred to, and we hold that the district court had the power to order their substitution.

It is objected, however, that the order was made by the 'judge, and not by the court, and is therefore void. It is true that the application was first made to the judge. The 2. SAME. district court of Palo Alto county was not in session, the records had not been found, and the six-months period from the rendition of the judgment would expire before the court would be in session. It presented a fair case for the exercise of the power to which we have already referred as being given by Code, section 4127, to the trial court, or a judge, to make "any necessary orders to secure a perfect record." If, upon examination by the judge, he found that to effectually accomplish the end sought there should be some action by the court in regular session, it was within his province to order it set down for such hearing. This is substantially what was done. The judge, finding the claim of the appellants with respect to the records to be true, caused the evidence to be retaken in open court, all parties appearing and taking part therein, and the evidence so taken was certified to by the court as of June 17, 1901. The fact that the final order and substitution was not made till after the expiration of the six months is immaterial, it being conceded that the proceeding to obtain such order was begun within the period. There is nothing shown indicating any negligence or laches on part of the appellants. They appear to have pressed the application in good faith and with reasonable promptness, and we think the trial court ruled correctly

in exercising jurisdiction and in ordering the record filed as of the date when the application was made. It follows, under this holding, that neither the district court nor the judge thereof acted without jurisdiction in the matter, and the rulings in respect thereto involve no error of which the defendant Consigney can justly complain. The *certiorari* proceedings are therefore dismissed, and the order substituting the record as of June 17, 1901, is affirmed.

II.    The petition of plaintiff Ormsby for specific performance was properly dismissed. That the Grahams had no title, and that the same was vested in Mrs. Jewett, was 3. SPECIFIC well known to plaintiff and Consigney when the performance: when will not alleged contract was made. The title still remained in Mrs. Jewett when the suit was brought and when the trial was had. She was the only person against whom a decree for specific performance could effectually operate. Whether her ownership was absolute, or whether she held the title as security, a court of equity would not decree a conveyance by her until the amount due her was paid or tendered. No such payment or tender was made before suit brought, nor does plaintiff by his petition now offer to do so. Indeed, the petition makes no demand for specific performance except as against the Grahams. The tender pleaded is a written tender to the Grahams, and is coupled with a demand that they convey plaintiff by "warranty deed a good marketable title to the said premises." The contract which plaintiff seeks to enforce is alleged to be for "the delivery to him of good and sufficient warranty deed to said premises by the said defendants, Graham, the title to said property to be shown to be good in the said defendants." In other words, the demand is not for a conveyance of the partial or qualified interest. or equity, if any they have, which the Grahams own in the land, but for the execution and delivery by them of a warranty deed which shall operate to vest a good title in the plaintiff. This, it is obvious, they could not do, and it is fundamental that the court will not, by decree of specific performance, compel a party to assume to

convey a title of which he is not possessed. The vendee, in a contract where the vendor is not vested with the title he agrees to convey, may recover his damages, if any, in an action at law, but he cannot have specific performance. *Greer v. Sellers,* 172 Ill., 549 (40 L. R. A. 592); 3 Pomeroy's Equity Jurisdiction, section 1405; *Hurlbut v. Kantzler,* 112 Ill., 482; *Luse v. Deitz,* 46 Iowa, 205; *Lewis v. Yale,* 4 Fla. 438; *Marlin v. Colby,* 42 Hun, 1; *Stevenson v. Buxton,* 37 Barb., 13; *Hill v. Fiske,* 38 Me., 520; *Morgan v. Bell,* 3 Wash. St. 554 (28 Pac. Rep. 925, 16 L. R. A. 614); *Ferrier v. Buzick,* 2 Iowa, 136.

This result is also involved in the general rule, upheld by the great weight of authority, that specific performance will not be decreed unless the right to insist thereon be mutual; that is, the remedy will not be applied in favor of a party against whom it would not be decreed upon demand of the other party to the agreement. The case of *Luse v. Deitz, supra,* is an apt illustration of the doctrine as interpreted and applied by this court. The wife of Luse owned in her own name certain real estate, and the husband entered into a contract to convey said real estate to Deitz in exchange for another tract to be conveyed by said Deitz to him. Luse procured his wife to join with him in executing a deed to Deitz, and tendered it to him, demanding a conveyance of the tract for which the exchange was to be made. Deitz refused to convey, and upon a suit by Luse for specific performance it was held that notwithstanding he had tendered Deitz a good title, yet, as the contract could not have been specifically enforced against the wife had she been unwilling to convey, there was such a lack of mutuality of remedy that the relief must be denied. See, also, *Richmond v. R. R.,* 33 Iowa, 486; *Welty v. Jacob,* 171 Ill. 624 (49 N. E. Rep. 723, 40 L. R. A. 98); *Old Colony R. R. v. Evans,* 6 Gray, 25 (66 Am. Dec. 394); *Benedict v. Lynch,* 1 Johns. Ch. 370 (7 Am. Dec. 484); *Rutland Co. v. Ripley,* 77 U. S. 339 (19 L. Ed. 955). We have, then, to inquire whether the Grahams could have enforced specific performance

against Ormsby had he refused to accept their deed. That this question must be answered in the negative is very apparent. Plaintiff was bound to accept the Grahams' deed only upon a sufficient showing that such deed conveyed to him a marketable title. The books define a marketable title as one that is not only good but indubitable. *Swayne v. Lyon,* 67 Pa. 436; *Vought v. Williams,* 120 N. Y. 253 (24 N. E. Rep. 195, 8 L. R. A. 591, 17 Am. St. Rep. 634); *Tomlin v. McChord's Representatives,* 5 J. J. Marsh, 135. The Grahams had no title, or, at least, a mere equitable title, or contract for title, making necessary a further conveyance from, or possible litigation with, another person, in order to ripen their interest into a clear legal title, and this the court would not compel plaintiff to accept. If, then, the contract would not be specifically enforced against plaintiff, such remedy cannot be invoked in his favor. There are certain exceptions to this rule, of which only one need be noticed in this connection. He who, having some interest in or defective title to land, agrees to convey a good title, cannot escape his liability in an action for specific performance, provided the purchaser elects to accept such title as the vendor's deed will convey; otherwise the law would enable such a vendor to take advantage of his own fault or wrong. *Townsend v. Blanchard,* 117 Iowa, 36; *Presser v. Hildenbrand,* 23 Iowa, 483; *Covell v. Cole,* 16 Mich. 223. Such a waiver of full performance has the effect to make the remedy mutual, and partial performance will be enforced, with assessment of damages or abatement from the contract price by reason of the failure to perform in full. This right to waive a defect and compel a conveyance, notwithstanding the vendor's inability to perform, is held not to exist where the vendor has not some apparent right or interest in the property, or where the vendee enters into the contract knowing the vendor has not the title which he agrees to convey. *Mills v. Van Voorhis,* 23 Barb. 125; *Knox v. Spratt,* 23 Fla. 64 (6 South. Rep. 924); *Winne v. Reynolds,* 6 Paige, 407. The plaintiff herein does not demand nor offer to accept a partial per-

formance, and there is therefore no waiver of entire per-
formance, without which waiver there can be no mutuality of
remedy, hence no specific enforcement.   On the contrary, as
we have already noted, he demands not simply the deed of the
Grahams for whatever it may be worth, but a deed from
them which shall convey a "good and marketable title," and
the tender on which he relies is expressly restricted by the
same condition.   If there be any contract between the Gra-
hams and Mrs. Jewett which a court of equity would speci-
fically enforce for the benefit of Ormsby, it is not set up or
pleaded by him, nor is it suggested that such relief is de-
sired.   It follows that the showing made by plaintiff was in-
sufficient to entitle him to a decree.

There is another sufficient ground for sustaining the
conclusion reached by the district court upon this issue.   The
Grahams, in a distinct division of their answer, and as a
4. SPECIFIC     full defense to plaintiff's claim for relief, al-
performance:
defenses.     lege that at the date of the contract two of
them were and still are married men, heads of families, re-
siding upon said land, and having homestead rights therein,
and that their wives did not unite in such contract nor con-
sent thereto, nor have either of them ever authorized or rati-
fied the same.   The defense thus pleaded was not attacked
by motion or demurrer, nor was the effect thereof sought to
be avoided by reply.   The allegations of this answer were
established by the evidence, without material dispute.   It
is a rule often approved by this court that, if matter pleaded
as a defense is not assailed by motion or demurrer, it will,
if proved, defeat the plaintiff's action, although, had the
question been raised, the answer would have been held to pre-
sent no defense.   *First National Bank v. Zeims,* 93 Iowa,
143; *Conger v. Crabtree,* 88 Iowa, 536; *Linden v. Green,*
81 Iowa, 365; *Benjamin v. Vielh,* 80 Iowa, 149; *Zundelo-*
*witz v. Webster,* 96 Iowa, 587; *Martin v. Widner,* 91 Iowa,
461; *G. W. Printing Co. v. Tucker,* 73 Iowa, 756.   Nor
does the statute which provides that no pleading shall be
held sufficient, on account of failure to demur thereto, obvi-

ate the necessity of properly raising an objection in the trial court. *Weis v. Morris,* 102 Iowa, 327; *Wood v. Dunham,* 105 Iowa, 704. Prior to the adoption of the Code of 1897, and the amendment found in section 2974 as to the right of enforcing partial performance where a homestead is involved, we had frequently held that a contract by the husband to convey land which included a homestead would not be specifically enforced in whole or in part. *Barnett v. Mendenhall,* 42 Iowa, 296; *Goodrich v. Brown,* 63 Iowa, 247; *Woolcut v. Lerdell,* 78 Iowa, 673. At the date of the trial of the case now before us the effect of the change introduced into the Code had not been passed upon by this court, and it would seem from the record that the trial court and counsel proceeded upon the theory that the rule of the cases last above cited still obtained. It was for this reason, it is safe to say, that the sufficiency of the answer was not challenged. Since then, and pending the appeal herein, our decision in the case of *Townsend v. Blanchard, supra,* has been announced, to the effect that a vendee may now, in a proper case, have the homestead set apart, and have specific performance as to the remainder of the land. On the strength of this precedent, plaintiff asks us to hold that he may have such relief. But such question cannot be raised for the first time in this court. The issues below were made, and the case tried, upon the theory that the existence of a homestead right was a defense, and it must be so treated by us upon appeal. Moreover, it must not be assumed that the statute referred to introduces any essential change in the nature of equity jurisdiction over the performance of contracts. Specific performance remains as it has ever been, a matter addressed to the discretion of the court, and will be denied whenever, by reason of complication of circumstances or otherwise, such a decree will operate unjustly or oppressively. See *Zundelowilz v. Webster,* 96 Iowa, 590, and cases there cited.

In the case before us, assuming plaintiff's theory of the facts, the grantors are tenants in common, and the title con-

veyed by them would be complicated by an outstanding legal title, by two unplatted homesteads, and two inchoate dower rights; and an attempt at specific performance in part, with abatement from the purchase price on account of these incumbrances, could scarcely fail to operate oppressively to the defendants, and presents a case in which a court of equity will refuse to intervene, but will leave the vendee to his remedy at law, if any he has.

*5. SPECIFIC performance: when denied.*

III. We now come to the claim presented by the cross-bill of the defendant Consigney against his codefencants to recover commissions on the alleged sale to Ormsby. At the outset of this inquiry let us look to the contract of agency, and ascertain what services Consigney undertook to render for the commission therein promised, which commission was the excess over $15,600 for which the land might be sold. The agreement is to the effect that he will use all proper efforts to sell and dispose of said real estate upon the stated terms and conditions, advertise the same, and, in the event of sale, to procure an abstract of title, the Grahams paying the expense thus incurred. He also undertakes to draw all papers necessary to consummate the sale, to take, in the name of his principals, all notes and mortgages to secure deferred payments, and to pay over the cash payment received, less commissions and expenses. The appellants on their part undertake, in consideration of these services, to execute and deliver a deed, through said agent, when the land is sold, and to allow him the stipulated "commission, to be retained in full out of the cash payment," or, if the payment does not pass through the agent's hands, then appellants are to pay the commission directly. Has Consigney shown such a substantial performance of these stipulations on his part that he may recover upon the contract? Upon the general question concerning the services to be performed by a land broker or agent to entitle him to recover upon a contract for commissions, there is much confusion in the cases. It is apparently held by some courts that the production of a purchaser who is ready and willing to buy upon

*6. AGENCY: commissions.*

the authorized terms is all that is required to entitle the agent to the agreed compensation. *Knapp v. Wallace,* 41 N. Y. 479; *Davis v. Lawrence,* 52 Kan. 383 (34 Pac. Rep. 1051); *Parker v. Walker,* 86 Tenn. 566 (8 S. W. Rep. 391); *Polvin v. Curran,* 13 Neb. 302 (14 N. W. Rep. 400). Other cases hold to the rule that, under a contract giving the agent authority to sell, and providing a commission for such service, the mere production of a purchaser who is willing to buy upon the stated terms is not sufficient, but an actual sale or binding contract of sale must be shown before a recovery can be had upon the agreement. *Hammond v. Crawford,* 66 Fed. Rep. 425 (14 C. C. A. 109, 35 U. S. App. 1); *Norman v. Reuther,* 25 Misc. Rep. 161 (54 N. Y. Supp. 152); *Keys v. Johnson,* 68 Pa. 42; *Haydock v. Stow,* 40 N. Y. 363; *Wilson v. Mason,* 158 Ill. 304 (42 N. E. Rep. 134, 49 Am. St. Rep. 162); *Olson v. Jodon,* 38 Minn. 468 (38 N. W. Rep. 485); *Richards v. Jackson,* 31 Md. 250 (1 Am. Rep. 49); *De Santos v. Taney,* 13 La. Ann. 152; *Dorrington v. Powell,* 52 Neb. 440 (72 N. W. Rep. 587); *Drury v. Newman,* 99 Mass. 256; *Bradford v. Menard,* 35 Minn. 197 (28 N. W. Rep. 248). Many of the decisions involving agents' and brokers' commissions turn more or less upon the effect of the custom obtaining in such business, and upon implied obligations growing out of the peculiar circumstances in the case decided. But where, as in this case, there is a special contract expressly stating the terms and conditions of the obligation entered into, there is no room for implication, nor can its terms be controlled by reference to custom. Consigney's contract empowered him to make a sale, to collect the cash payments, and to retain therefrom his commissions. By his petition he alleges that he did in fact make a sale, which appellants wrongfully refused to carry out by making the proper conveyance. Upon such a claim, based upon such an agency, we have heretofore held that the recovery of commissions depends upon a "consummated sale" —not necessarily a sale consummated by the delivery of deeds of conveyance, but such a contract as will be enforced

by the courts, if enforcement be demanded. *Fells v. Butcher*, 93 Iowa, 414. The doctrine of this decision is well supported by the authorities. In *Wilson v. Mason, supra,* the Illinois court reviews the leading precedents, and holds the true rule to be that the commission of an agent who undertakes to sell (as distinguished from a mere agreement to find a purchaser) "is earned when a contract is entered into which is mutually obligatory upon the vendor and the vendee." This holding is fully sustained by the other cases in the list last above cited, as well as many more to which no special reference is here made. The rule of the *Fells Case* is controlling in the present controversy. The cross-petitioner's action is based upon a special contract of agency to sell, and he can recover only by proof of a sale in fact; that is, a sale so far consummated as to be valid, binding, and mutually obligatory upon the parties—vendor and vendee. That a completed sale as a basis for the recovery of commissions was contemplated by the parties is shown in the stipulation, which authorized the agent to retain his compensation from the first cash installment of the price for which the property might be sold. In a case very similar to the one at bar, where the agent's commission was to be the excess obtained over a fixed net price, the Supreme Court of Minnesota has said that a provision of this kind "involves the proposition that a sale shall be consummated" before an action by the agent on the contract will be sustained. *Cremer v. Miller,* 56 Minn. 52 (57 N. W. Rep. 318).

In the preceding division of this opinion we have held that no contract was effected between Ormsby and Consigney which equity will enforce against appellants. This alone 7. SAME. has been held sufficient to defeat a claim for agent's commissions for negotiating an alleged sale. *Simonson v. Kissick,* 4 Daly, 143; *Crombie v. Waldo,* (Super. Ct. N. Y.) 17 N. Y. Supp. 373. And such seems to be the logical import of the opinions of this court in *Felts v. Butcher, supra,* and *Burns v. Oliphant,* 78 Iowa, 456. See, also, *Wilson v. Mason, supra,* and *Ward v. Cobb,* 148 Mass. 518 (20

N. E. Rep. 174, 12 Am. St. Rep. 587), which, while not parallel cases have a bearing upon the principle under discussion. In the case before us we need not go to the extent of holding the denial of specific performance is conclusive against the right to recover commissions, for, irrespective of the question of its equitable enforcement, we think no contract of sale is shown to have been made. It must be remembered that the contract of agency authorized Consigney to sell the land for the net price of $15,600, to be paid $5,000 in cash, and remainder "in sums to suit purchasers and sellers." Neither Consigney nor Ormsby claim in testimony to have adjusted or agreed between themselves or with appellants upon the time or terms of payment of the remaining $10,600. Ormsby swears, in substance, that, upon being told the terms of the agency contract, he told Consigney he would take the land, and thereupon gave his check for $5,000, "as the first payment." So far as appears from his testimony, nothing was said between them as to when or how the remainder was to be paid. Consigney testifies that he agreed to sell Ormsby the land "at $36.50 per acre, $5,000 to be paid in cash, and the balance to be arranged between him and the Grahams." Upon the refusal of the Grahams to ratify the sale, Consigney took the check back to Ormsby, who wrote across the face of it, "Tendered and refused by Grahams," and left it with Consigney. It is an elementary proposition that, to constitute a contract, the minds of the parties must meet in common understanding and agreement upon all material terms and conditions. Here the appellants had reserved the right to be consulted in arranging the deferred payments. The agent, recognizing the right, left the matter of the payment of more than two-thirds of the net selling price for future adjustment between the principal parties. That adjustment was never made nor, indeed, does it appear that appellants and Ormsby ever met, or in any manner attempted such adjustment, prior to the commencement of this action. As there was no agreement, no meeting of minds, no contract, the delivery of the check, even if we treat it as a cash

payment, had not the slightest effect to bind either party. Nor do we think that the subsequent offer of Ormsby to pay all cash has any effect upon the legal relations of the parties as thus fixed. Consigney testifies that on Saturday, after receiving the check, he met the appellants, who refused to ratify the sale negotiated by him, and said they would make no sales unless they could have all cash. In reply, Consigney told the appellants that he had sold upon the terms authorized, and gave them to understand he expected them to carry it out accordingly. On the following Monday or Tuesday, Ormsby told Consigney he would pay all cash, and proceeded on Wednesday to make a written tender of $15,600, on condition of receiving a warranty deed from the appellants conveying to him a good marketable title. This tender is of no force or value in determining whether a contract was in fact made. A tender of performance presupposes a con-

8. TENDER.     tract already complete in its terms and conditions. It cannot be treated as in itself a part performance to take the contract out of the statute of frauds. The check for $5,000 had been delivered upon an attempted contract to sell for part cash and remainder in deferred payments, and there is shown no agreement or understanding between Ormsby and Consigney that such a check should be carried forward and treated as a cash payment in the new transaction by which the entire purchase price was to be paid at once. On the other hand, the fact that the check had been in effect obliterated by the plaintiff writing "tendered and refused by Grahams" across its face and that he also ignored it in making his written tender of the full sum of $15,600, undiminished by the amount of the check, makes it entirely clear that this instrument was considered and treated by him and by Consigney as having been abandoned with the abandonment of the terms of the proposed sale on which it had been made and delivered. There was therefore neither part payment nor part performance, and the alleged agreement, resting wholly in parol, is unenforceable. In other words, there was no sale. We think this theory is unavoidable, even upon ap-

pellee's theory that the delivery of plaintiff's check to the agent has the same effect as if the payment had been made in money.

But this proposition cannot be conceded. No rule of law is better established that that, in the absence of express authority from his principal, an agent cannot bind his principal by accepting payment in any other medium than money. The agent has no implied authority to receive payment in drafts, bills of exchange, or checks. See statement of rule and authorities cited in 22 Am. & Eng. Ency. Law (2d Ed.) page 522. The principal may, it is true, so act that he will be held to have waived objections to such payment, or to have ratified the agent's act, and thus be bound thereby. There is nothing in· this case upon which such waiver or ratification can be predicated. In one place Consigney seems to say that at their meeting on Saturday, after the alleged contract with Ormsby· he showed or read the check to appellants, but he elsewhere states unequivocally that "they (the Grahams) never saw the check. * * * I do not know as I told them I had this check, and don't think I showed it to them, but told them I had made a sale according to contract, and think I was ready to tell them I had the check." The appellants deny having any knowledge of the existence of such instrument until after they had repudiated the contract with Ormsby. Being without knowledge of the delivery of the check, no word or act of theirs can be held to work a ratification of the agent's act in receiving it.

*9. AGENCY: payment by check.*

Other questions are argued, but the points already treated in this opinion, already too greatly extended, are decisive of the appeal. There was no sale of the land, and no such performance of the contract of agency as entitled the· appellee to the commissions.

It is therefore ordered that the decree of the district court upon the issues between plaintiff and defendants be *affirmed,* and that the decree in favor of defendant Consigney, upon his cross-petition against the Grahams, be REVERSED.