### DAHLINGER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4558.

Circuit Court of Appeals, Third Circuit.

July 28, 1931.

W. W. Booth and W. A. Seifert, both of Pittsburgh, Pa. (Smith, Shaw, McClay &

Seifert, of Pittsburgh, Pa., of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and A. G. Divet and Sewall Key, Sp. Assts. to Atty. Gen., for respondent.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This case comes up upon petition for review of an order and decision of the Board of Tax Appeals sustaining the Commissioner of Internal Revenue in his construction of section 206 (a) (1) of the Revenue Act of 1921 (42 Stat. 232), and section 208 (a) (1) of the Revenue Act of 1924 (26 USCA § 939 note), as applied to a sale by the petitioner of certain stock under a contract made in 1920.

In January, 1920, the petitioner and other stockholders of the Columbia Plate Glass Company entered into an agreement with Frazier & Co., brokers, for the sale of their stock, constituting a majority of the stock of the Glass Company. The stock indorsed in blank for transfer was deposited with a bank in trust, and held for the selling stockholders and the brokers, to be delivered to the brokers upon compliance by them with the terms of the agreement. The brokers deposited $50,000 in cash with the trustee to be held by it until the sale should be consummated, and, in case of consummation, that sum was to be credited on account of the purchase price.

The agreement provided that certain notes and securities were to be delivered to the trustee as security for the payments. The delivery of the notes and other securities to the trustee, it was agreed, should release and discharge the brokers from all liability to the selling stockholders. The trustee was to make the payments for the stock to Dahlinger and the other stockholders semiannually, beginning December 30, 1920, and ending December 30, 1925. On February 11, 1920, the brokers notified the trustee that they desired to obtain delivery of the stock in accordance with the agreement of January 27, 1920, and deposited securities and cash with the trustee, whereupon the stock was delivered to Frazier & Co. Certain exchanges and substitutions of securities deposited with the trustee were made from time to time, the details of which are immaterial. The brokers paid the several installments when each became due, in accordance with the agreement of January 27, 1920.

The petitioner had owned his Columbia Plate Glass Company stock for more than two years prior to 1920. In his income tax returns, he reported a profit of $13,362 for each of the years 1923, 1924, and 1925 from the proceeds of the sale of the stock, and computed his tax at the rate of 12½ per cent. upon the theory that the rate for sales consummated after December 31, 1921, was applicable.

The Commissioner included the item of $13,362 with other income for each year, and computed the tax on the income at normal and surtax rates, and thereby determined a deficiency. The case turns upon the interpretation of sections 206 (a) (1) of the Revenue Act of 1921 or section 208 (a) (1) of the Revenue Act of 1924, which are identical in their terms, and are as follows: "The term 'capital gain' means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921."

Congress has defined what "capital gain" means. The question then is, What is the meaning of the word "consummated" as applied to a sale? The dictionary meaning of "consummate," as adopted by the Commissioner and the Board of Tax Appeals, is as follows: "To bring to completion; to raise, bring or carry to the highest or utmost point or degree; to complete; to finish; to perfect; to achieve; to fulfill."

The Board of Tax Appeals also applied the statements in Williston on Sales, showing the distinction between a contract to sell and a sale as follows:

"A contract to sell goods is a contract whereby the seller agrees to transfer the property in goods to the buyer for a consideration called the price.

"A sale of goods is an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price." Williston on Sales, vol. 1, § 1.

Williston proceeds as follows: "The distinction is often expressed by the terms 'executory' and 'executed' sales. Whether a bargain between parties is a contract to sell or an actual sale depends upon whether the property in the goods is transferred. If it is transferred, there is a sale, an executed sale, even though the price be not paid." Williston on Sales, vol. 1, § 2.

The stock was delivered to the brokers in accordance with the agreement, prior to the effective date, December 31, 1921, of sections 206 and 208 of the Revenue Acts of 1921 and 1924, although at that time only installments had been paid upon the agreed price. If default had been made in the payment of any installment, the taxpayer could not by suit have recovered the stock, but had merely the right to recover the unpaid installments of the purchase price as they became due. The title to the stock had passed from the petitioner. As a sale, therefore, the transaction was complete. It was an executed sale, and therefore was a sale "consummated" before and not after December 31, 1921. 12 Corpus Juris, 1310; Ormsby v. Graham, 123 Iowa, 202, 214, 98 N. W. 724; Micks v. Stevenson, 22 Ind. App. 475, 51 N. E. 492.

While the purpose of Congress in passing the bill is indicated in the reports of the committees and the debates before the committees to be remedial, and therefore the taxpayer is entitled to have it liberally construed, the construction which the petitioner attempts to put upon it is directly contrary to its terms. What the plaintiff is asking for is not consistent with the law of sales. He desires the court to construe the term "consummated sale" as meaning a sale not consummated or completed until the price is paid, although title to the property has passed.

Our view is that, while the intention of Congress was to relieve sellers of capital assets from the heavy taxes levied upon the profit made, as income, it did not intend to afford that relief except as to sales "consummated" after December 31, 1921. If it were to be construed as the petitioner contends, it would mean that any sale of capital assets, in which the title to the property had passed, on or at any time before December 31, 1921, where installments of the purchase price, great or small, remained unpaid, would have to be construed as an unconsummated sale. As we construe the section in controversy, the clear intent of Congress was to exempt from the income tax provisions only those sales where the title to the thing sold had not passed prior to the date fixed in the act.

The petition is dismissed, and the decision of the Board affirmed.