## EAVENSON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4555.

Circuit Court of Appeals, Third Circuit.
July 28, 1931.

W. W. Booth and W. A. Seifert, both of Pittsburgh, Pa. (Smith, Shaw, McClay & Seifert, of Pittsburgh, Pa., of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and A. G. Divet and Sewall Key, Sp. Assts. to Atty. Gen., for respondent.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This case comes up upon petition for review of the decision of the Board of Tax Appeals in a proceeding before the Board for redetermination of a deficiency found by the Commissioner of Internal Revenue in the petitioner's taxes for the years 1922 to 1925, inclusive.

The petitioner entered into a contract of sale which is, in part, as follows:

"Memorandum of agreement made this 17th day of November, 1920, between Howard N. Eavenson, of Pittsburgh, Pa., party of the first part, hereinafter called the Seller, and Elkhorn Coal & Coke Company, a West Virginia Corporation, party of the second part, hereinafter called the Buyer, and Seaboard National Bank, New York, hereinafter called the Trustee, witnesseth:

"The Seller has this day sold, transferred and delivered to the Buyer, Three Hundred and forty-six (346) shares of the Capital Stock of the Central Pocahontas Coal Company, a West Virginia Corporation, the par value of said shares being One Hundred ($100.00) Dollars per share.

"Price: The price to be paid for said stock by the Buyer is Two hundred and forty-two thousand, two hundred ($242,200.00) Dollars, being at the rate of Seven hundred ($700.00) Dollars per share.

"Payment: The Buyer has this day paid on account of the purchase price of said stock, in cash, receipt whereof is hereby acknowledged, the sum of Sixty thousand, five hundred and fifty ($60,550.00) Dollars. The balance of One hundred and eighty-one thousand, six hundred and fifty ($181,650.00) Dollars, the buyer hereby agrees to pay in ten installments to the Seaboard National Bank, as Trustee, at 18 Broadway, New York City, each installment bearing interest at the rate of Six (6%) per cent. per annum from even date, due on the following dates for the following amounts:

| | |
|---|---:|
| May 17th, 1921 | $ 18,165 00 |
| November 17th, 1921 | 18,165 00 |
| May 17th, 1922 | 18,165 00 |
| November 17th, 1922 | 18,165 00 |
| May 17th, 1923 | 18,165 00 |
| November 17, 1923 | 18,165 00 |
| May 17th, 1924 | 18,165 00 |
| November 17th, 1924 | 18,165 00 |
| May 17th, 1925 | 18,165 00 |
| November 17th, 1925 | 18,165 00 |
| | $181,650 00 |

"In order to secure the payment of each of the above installments and interest as each becomes due, the Buyer has this day deposited with the Seaboard National Bank, as Trustee, certificates of Central Pocahontas Coal Company Capital Stock, purchased from the Seller, aggregating Three Hundred and forty-six (346) shares, as collateral security.

"Upon payment of each of the above installments and interest thereon, the Trustee will forward the amount of such payment to the Seller, and return to the Buyer Thirty-four (34) shares of said Capital Stock, together with Power of Attorney covering said Thirty-four (34) Shares, representing approximately one-tenth of amount of collateral deposited with the Trustee under this agreement as hereinafter stated. The Seller will furnish the Trustee and Buyer duplicate receipts upon the payment of each installment made hereunder. On the completion of the payment of all of the aforesaid installments and interest thereon by the Buyer, the Trustee shall deliver to the Buyer the remainder of the said certificates of stock held as collateral hereunder, at which time the Trustee shall also return to the Buyer the Power of Attorney, which shall be cancelled and the Trust shall thereafter be no longer in effect.

"In the event of default on the part of the Buyer in making payment of any one of the said installments and interest when the same shall become due, and in case such payment is not made after thirty days notice of such default by the Trustee to the Buyer, the Trustee is then empowered to sell this stock at the highest market price obtainable in order to satisfy the total unpaid balance due the Seller, and any amount received in excess of said unpaid balance shall be returned to the Buyer.

"The Buyer is entitled to all dividends, including stock dividends, which hereafter may become payable on this stock.

"The Trustee shall be entitled to reasonable compensation for services rendered in execution of the Trust hereby created and the Seller and Buyer each agrees to pay one-half of such compensation, as well as one-half of the expenses reasonably incurred by the Trustee hereunder.

"The Seaboard National Bank, as Trustee, hereby accepts the trusts in this Trust Agreement created and declared and agrees to perform the same upon the terms and conditions hereinabove set forth."

The petitioner contends that the profits set out in his return of taxable income were erroneously assessed by the Commissioner at normal and surtax rates, whereas they should have been assessed as taxable gain from the sale of capital assets consummated after December 31, 1921, under the provisions of section 208 (a) (1) of the Revenue Act of 1921 (42 Stat. 232) or section 208 (a) (1) of the Revenue Act of 1924 (26 USCA § 939 note).

The Board of Tax Appeals found:

"This contract was carried out in accordance with its terms. The petitioner had owned the stock sold for more than two years prior to November 17, 1920.

"The petitioner reported as profit on the above-mentioned sale $19,849.88 in each of the years 1922 to 1925, inclusive, and computed the tax thereon at the rate of 12½ per cent.; the Commissioner included these installments with other income in each year and taxed the whole at the normal and surtax rates, thereby determining the deficiencies. The sale of the petitioner's stock in the Central Pocahontas Coal Company was not consummated after December 31, 1921."

The Board decided that the sale of the petitioner's stock in the Central Pocahontas Coal Company was consummated before and not after December 31, 1921, and that the profits therefrom were not taxable under the capital gain provisions of the Revenue Acts of 1921 and 1924.

For the reasons stated in the case of Dahlinger v. Commissioner of Internal Revenue (C. C. A.) 51 F.(2d) 662, we find no error in the decision of the Board of Tax Appeals, which is accordingly affirmed.