## COMMISSIONER OF INTERNAL REVENUE v. SWIFT.

### No. 6581.

Circuit Court of Appeals, Ninth Circuit.

Jan. 5, 1932.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, A. G. Divet, and J. G. Remey, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and Otis J. Tall, Sp. Atty., Bureau of Internal Revenue, both of Washington D. C., of counsel), for petitioner.

George M. Naus, of San Francisco, Cal., and Andrew T. Smith and Virgil Y. Moore, both of Washington, D. C., for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and JAMES, District Judge.

WILBUR, Circuit Judge.

The petitioner seeks to review an order of the Board of Tax Appeals reversing a determination by petitioner of a deficiency income tax for the year ending December 31, 1924. The sole question involved in the controversy is whether or not a sale by respondent of certain oil lands for the sum of $900,-000 was consummated within the meaning of that term as used in the Revenue Act of 1921 (42 Stat. 227) before the 31st day of December, 1921.

A contract for the sale of an undivided three-fourths interest of certain land was entered into on the 4th of March, 1921. This contract provided for the payment of the purchase price in installments, $180,000 on March 25, 1921, and the sum of $90,000 on March 15, 1922, and $90,000 semiannually thereafter until the entire purchase price was paid September 15, 1925. Upon payment of the first installment, the vendor was to deposit in escrow with the Los Angeles Trust & Savings Bank of Los Angeles, Cal., a grant deed of the property sold, except as to certain unpatented lands as to which a quit-claim deed was to be deposited in escrow. At the time of the sale, the property was in the possession of the vendee, Chanslor-Canfield Midway Oil Company, under certain oil leases, wherein two of the vendors, T. J. Swift and J. W. Jameson, were lessors and the vendee was lessee. The contract of sale provided that royalties under the lease should cease on March 15, 1921. It is further provided: "4. That this agreement and the sale evidenced hereby are intended to be and are a full and complete settlement of all claims and demands of every kind and nature which the first parties or either of them now has or may hereafter have against the second par-ty and that the latter now has or may hereafter have against first parties on account of the leases above mentioned or the acts of either party hereto thereunder, or on account of the sale evidenced hereby, except as to the royalty due under said leases from March 1, 1921, to March 15, 1921, both dates inclusive, subject, however, to the provisions of paragraph 4 of Article III hereof."

Paragraph 4 referred to in the above quotation from the agreement was one with relation to the rights of the parties in the event of the failure to pay the installments when due. If the sale were consummated within the meaning of the statute by the execution and delivery of the contract of sale, by the execution and delivery in escrow of the deeds to the property, and by the possession of the property by the vendee under the terms of the agreement of sale rather than under the leases theretofore executed, all of which occurred before December 31, 1921, the position of the Commissioner is correct and that of the Board of Tax Appeals is wrong. If, however, the sale were consummated at any later date, the order of the Board of Tax Appeals reversing the petitioner's determination of deficiency should be sustained.

Respondent contends that the word "consummated" used by Congress in the Revenue Act of 1921 is too clear and plain to require or invite judicial construction. It is suggested that the definition given by a standard lexicographer is the proper definition to be applied in the case at bar. Our attention is invited to the definition in Webster's New International Dictionary, as follows: "v.t. 1. To bring to completion; to raise to the highest point or degree; to complete; finish; perfect; achieve. 2. To put an end to; destroy. 3. To complete by intercourse—said of marriage. v.i. To come to fulfilment or perfection; also, to consummate a marriage."

A quotation from the decision of the Court of Claims in Johnston v. United States, 17 Ct. Cl. 173, is cited to this effect: "An act is not consummated where anything in relation to it remains to be done."

Appellant says: "Certainly, there was something 'in relation to' this sale which 're-mained to be done.' Hence, it is apparent that the meaning of the word must be warped and distorted if this sale is said to have been consummated at a time when it was in fact merely begun, at a time when it might or might not result in the ultimate passing of title, at a time when it might or might not result in the payment of the purchase price to this petitioner."

If we accept the contention of the respondent, it would not only follow that the sale was not consummated until the deed was delivered, but with equal force it would follow that the sale was not consummated until the final payment therefor, for in the view suggested one is as essential to the completion of the transaction as the other. The delivery of the deed completes the transaction on the part of the vendor and the payment of the purchase price on the part of the vendee. The question of the meaning of the word "consummated" as used in the Revenue Act of 1921, § 206 (a) (1), 42 Stat. 232, has been considered by the Circuit Court of Appeals of the Third Circuit in two recent cases; Dahlinger v. Commissioner, decided July 28, 1931, 51 F.(2d) 662, and Eavenson v. Commissioner, 51 F.(2d) 664. In each case the court was dealing with the meaning of the word "consummated" as applied to a sale of personal property. In the first case, Dahlinger v. Commissioner, supra, an agreement for the sale of corporation stock was entered into in January, 1920.

"The stock indorsed in blank for transfer was deposited with a bank in trust, and held for the selling stockholders and the brokers, to be delivered to the brokers upon compliance by them with the terms of the agreement. The brokers deposited $50,000 in cash with the trustee to be held by it until the sale should be consummated, and, in case of consummation, that sum was to be credited on account of the purchase price.

"The agreement provided that certain notes and securities were to be delivered to the trustee as security for the payments. The delivery of the notes and other securities to the trustee, it was agreed, should release and discharge the brokers from all liability to the selling stockholders."

The court construed the effect of the agreement as follows: "The stock was delivered to the brokers in accordance with the agreement, prior to the effective date, December 31, 1921, of sections 206 and 208 of the Revenue Acts of 1921 and 1924 [42 Stat. 232; 26 USCA § 939 note], although at that time only installments had been paid upon the agreed price. If default had been made in the payment of any installment, the taxpayer could not by suit have recovered the stock, but had merely the right to recover the unpaid installments of the purchase price as they became due. The title to the stock had passed from the petitioner. As a sale, therefore, the transaction was complete. It was an executed sale, and therefore was a sale 'consummated' be-

fore and not after December 31, 1921. 12 C. J. 1310; Ormsby v. Graham, 123 Iowa, 202, 98 N. W. 724; Micks v. Stevenson, 22 Ind. App. 475, 51 N. E. 492."

The court expressed his view upon this situation as follows:

"While the purpose of Congress in passing the bill is indicated in the reports of the committees and the debates before the committees to be remedial, and therefore the taxpayer is entitled to have it liberally construed, the construction which the petitioner attempts to put upon it is directly contrary to its terms. What the plaintiff is asking for is not consistent with the law of sales. He desires the court to construe the term 'consummated sale' as meaning a sale not consummated or completed until the price is paid, although title to the property has passed.

"Our view is that, while the intention of Congress was to relieve sellers of capital assets from the heavy taxes levied upon the profit made, as income, it did not intend to afford that relief except as to sales 'consummated' after December 31, 1921. If it were to be construed as the petitioner contends, it would mean that any sale of capital assets, in which the title to the property had passed, on or at any time before December 31, 1921, where installments of the purchase price, great or small, remained unpaid, would have to be construed as an unconsummated sale. As we construe the section in controversy, the clear intent of Congress was to exempt from the income tax provisions only those sales where the title to the thing sold had not passed prior to the date fixed in the act.

"The petition is dismissed, and the decision of the Board affirmed."

In the second case above referred to, Eavenson v. Commissioner, supra, the sale under consideration was one of 346 shares of the capital stock of the Central Pocahontas Coal Company, for $242,200. $60,550 was paid at the time of the execution of the contract. Two more installments of $181,650 were paid before December 31, 1921, the balance was payable in equal semiannual installments, the last payment being due November 17, 1925. The stock was deposited with the Seaboard National Bank as security for the unpaid installments. The question was whether or not this sale was consummated within the meaning of the Revenue Acts of 1921 and 1924 before or after December 31, 1921. The Board of Tax Appeals decided that the sale was consummated before December 31, 1921, and the Circuit Court of

Appeals of the Third Circuit affirmed that decision.

It will be observed that while the title had passed before December 31, 1921, only $60,-550 of the purchase price had been paid before that date. As we have already pointed out, from the standpoint of the definition of consummation given by the dictionaries, there is no more reason to hold that the sale is consummated when the vendor owner has complied with his provisions than there is for holding the sale is consummated when the vendee only has complied with the provisions of the contract binding him.

A similar but not an identical question has been before the courts in determining whether or not the obligation to pay for the property sold accrued at the date of the execution of the contract of sale or at some future date. This question was considered by the Circuit Court of Appeals of the Fourth Circuit in American Land & Inv. Co. v. Commissioner, 40 F.(2d) 336, 337, in connection with the sale of real estate wherein the purchaser paid $10,000 in 1920 under a contract for the sale of the land when executed, and $40,000 in 1921, when the deed was executed. The balance of the purchase price of $100,-000 was to be secured by a mortgage. The exact terms of the contract were not before the Court of Appeals, and this is referred to in the opinion as limiting the court to the findings of the Board which had held that the sale took place in July, 1920; that is, at the time of the execution of the contract of sale and the payment of $10,000. The rule in that state in regard to the relation of the parties to a contract of sale of real estate seems to be identical with that in California in which state the contract now under question was executed. The Circuit Court of Appeals in its opinion, after citing Singleton v. Cuttino, 107 S. C. 465, 92 S. E. 1046, said: "There it is held that the legal and equitable rights of the parties were fixed by the particular contract under consideration, and that before the conveyance the vendor had the legal estate in the lands and the vendee had the equitable interest. It is pointed out there that the rights of the parties, with reference to damages for breach of contract and specific performance, were fixed by that particular contract of sale. But here we are passing upon questions involving the meaning of the word sale for purposes of income tax and are not concerned with questions relating to specific performance and breach of contract. The courts have shown a strong tendency to take the view that 'the sale' for revenue purposes

takes place when the deed is executed and a substantial part of the purchase price is paid. This was the view taken by this court in Stieff v. Tait (D. C.) 26 F.(2d) 489, affirmed (C. C. A.) 31 F.(2d) 1020."

The Circuit Court of Appeals sustained the finding of the Board of Tax Appeals that the sale took place in 1921 when the second installment of the purchase price was paid and the deed was executed. This decision was based in part upon the decision of the Supreme Court in Lucas v. North Texas Lbr. Co., 281 U. S. 11, 50 S. Ct. 184, 74 L. Ed. 668. In that case, the question involved was whether or not the purchase price accrued to the taxpayer who kept the books on an accrual basis before or after the 31st day of December, 1916. There a ten-day option to purchase had been accepted on December 30, 1916. The court held that this acceptance constituted an executory contract of sale. The court further said: "In the notice, the purchaser declared itself ready to close the transaction and pay the purchase price 'as soon as the papers were prepared.' Respondent did not prepare the papers necessary to effect the transfer or make tender of title or possession or demand the purchase price in 1916. The title and right of possession remained in it until the transaction was closed. Consequently unconditional liability of vendee for the purchase price was not created in that year." Citing authorities.

An examination of the contract involved in that case and shown in the opinion of the Board of Tax Appeals which was there under consideration (7 B. T. A. 1193) shows that the papers involved, among other things, "the agreement and assumption by the said Southern Pine Lumber Company of the unpaid purchase money, principal and interest, against any of the properties above named and the obligation of the grantee, as evidenced by the various instruments herein referred to, and all unpaid taxes against said land"; and that "a satisfactory indemnity obligation is to be executed by Wesley Morse [one of the vendors] to the Southern Pine Lumber Company [vendee] to protect it in accepting a deed from James Kelly Morse to his rights to the one hundred (100) acres hereinabove mentioned." Just how far the court was influenced in its conclusion by the fact that the sale was for cash, and that in the notice exercising the option purchase price was to be paid as soon as the papers were prepared, is not clear from the opinion. The gist of the opinion is that the obligation to pay the purchase price did not accrue be-

fore January 1, 1917. In the case at bar, the question of when the obligation to pay the purchase price accrued, within the meaning of the statute, is not involved for the reason that the tax herein is assessed only upon the installments due and paid in the year 1924. The only question is whether or not the rate to be paid upon such portion of the payment as was income should be upon the rate fixed upon sales consummated before or after December 31, 1921. Although it is true, as stated by the Circuit Court of Appeals for the Fourth Circuit in American Land & Inv. Co. v. Commissioner, supra, that the question involved here is not to be determined solely by consideration of the respective rights of the parties under a contract of sale of land, it is at least useful to consider that question in connection with the proposition involved here, for it must be admitted that for some purposes a sale was consummated when a binding agreement has been executed between a vendor and vendee binding the former to convey the land and the latter to pay the purchase price. This rule is applied in cases where real estate brokers engage to consummate a sale. Ormsby v. Graham, 123 Iowa, 202, 98 N. W. 724.

It is frequently said by the courts of California that, at the time of the execution of a contract for the sale of land, the purchaser acquires the equitable estate therein, and the vendor thereafter holds the legal title as security for the payment of the balance of the purchase price. Ellis v. Jeans, 7 Cal. 409, 415; Orange Cove Water Co. v. Sampson, 78 Cal. App. 334, 248 P. 526; Retsloff v. Smith, 79 Cal. App. 443, 249 P. 886. In the case of Estate of Dwyer, 159 Cal. 664, 115 P. 235, the Supreme Court of California had occasion to consider the exact time at which the equitable title became vested in the purchaser. In that case, it was held that the complete equitable title did not vest until the payment of purchase money was completed or was tendered.

In Stewart v. Mann, 85 Or. 68, 165 P. 590, 592, 1169, it was said that, "The doctrine of the cases is to the effect that a vendee acquires an estate in land under an executory contract for the purchase of the same in proportion as he pays the purchase price and is not in default in the performance of his covenant. The vendor holds the legal title to that extent in trust for the vendee. When the seller repudiates or fails to perform the contract, the vendee has the right to get out of the land what he put into it, by foreclosing his equitable lien upon the premises."

This view was also indicated by the Supreme Court of California in California Delta Farms v. Chinese American Farms, 207 Cal. 298, 278 P. 227, 231, where it was said: "The equitable doctrine above referred to is sometimes applied, but only to the payments made on the purchase price; the full equitable title matures only upon the full payment of such price."

Under the foregoing authorities, it would seem to follow that the sale was consummated when the title to the thing sold passed from the vendor to the vendee, and a substantial part of the purchase price was paid. On the other hand, if the purchaser has fully performed the contract on his part so that he is entitled to a deed or transfer, it would be equally clear that the sale is consummated. A delay in the actual transfer of title would not defer consummation, we think, within the meaning of the law, although that question is not directly involved here. In the absence of the payment of the full purchase price, or the delivery of the deed, it would seem that the most that could be said in reference to a contract for the sale of land is that the sale was consummated before December 31, 1921, to the extent that the purchase price had been paid before that date, for, as to the purchase price thus paid a proportion of equitable title is vested in the vendee and the title of the purchase money paid is vested in the vendor. If this be true, it would follow that as to money paid during the year 1924 the sale should not be considered as having been consummated before December 31, 1921. The petitioner, in his contention to the contrary, relies upon the motives which induced Congress to pass the law in question with relation to a lower rate of taxation provided by the provisions of the Revenue Act of 1921 in question. The argument is that Congress was advised that the rates of taxation upon increases in capital realized by sales thereof, treated as profits under the law to be taxed as income, had prevented many transfers of property which would otherwise have been consummated; that the reduction of taxes upon such profits in the law of 1921 was intended to encourage sales by removing the burden theretofore placed thereon by previous revenue laws. It is therefore contended that, where the terms of the sale had been agreed to and were irrevocably fixed before December 31, 1921, there was no necessity for offering a reduced rate of taxation to the vendor and vendee because they had already effected the sale, notwithstanding the tax rate then in force. The report of the committee in

charge of the bill indicates this to have been the purpose of this legislation; but we do not think that this general consideration can control all others in determining whether or not a sale had been consummated within the meaning of the statute.

We conclude that under the circumstances shown by the record the sale was not consummated before December 31, 1921, as to the installments of the purchase money due or paid during the year 1924, and that taxation upon these installments should be based upon the more favorable rate fixed by the Revenue Act of 1921.

The order of the Board of Tax Appeals is affirmed.