OWEN v. RAMSEY ET AL.

No. 2,909. Filed November 17, 1899.]

BROKERS. — *Commission.* — *Sales.* — *Condition Precedent.* — Plaintiff entered into a written agreement with defendant to negotiate the sale of certain bonds which the latter had agreed to take in payment for county work which he had contracted to do, the commission to be paid from the second payment realized from the sale of the bonds. Plaintiff procured a purchaser who was able and willing to buy the bonds under the terms prescribed in the contract, but before the bonds were delivered to plaintiff the sale thereof was declared illegal and perpetually enjoined. *Held*, that plaintiff was not entitled to the commission, since by the contract the payment was made to depend upon a contingency that never arose.

From the Greene Circuit Court. *Affirmed.*

*Thomas Van Buskirk, C. E. Davis* and *W. V. Moffett,* for appellant.

WILEY, J.—Upon petitions filed before the board of commissioners of Greene county such proceedings were had that such board ordered the construction of a system of gravel and macadamized roads. To provide a fund for the payment of the construction of such roads bonds aggregating in excess of $147,000 were issued by the board, under the provision of the statute. The appellees had been awarded the contract for the construction of the roads, and the county treasurer had sold to them $147,000 of such bonds at their face value. Upon such sale appellees did not pay the treasurer for such bonds, but took them in payment for the construction of the roads under their contract. Appellees then entered into a written contract with appellant, as a broker, to negotiate the sale of such bonds. The contract specified the terms upon which such bonds were to be sold, and for making such sale appellees were to pay appellant a commission of one-half of one per cent. on the aggregate amount of the sale. This contract contained the following provisions: "That said parties of the first part [appellees] agree that said party of the second part [appellant] shall have the sale of said bonds for ten days * * .* on the following terms to wit: $5,000 of said bonds to be delivered and paid for as soon as the legality of said bonds is established to the satisfaction of the purchasers; $20,000 payable May 15, 1897." Then follow the amounts and dates of the remaining payments. The contract further provides that "such party of the second part agrees to deliver said bonds to the purchaser free of expense to said parties of first part. In consideration of which said parties of the first part agree to pay said Thomas C. Owen for making said sale a compensation of one-half of one per cent., to be paid out of the second payment of money realized from such sale of bonds." Appellant brought this action to recover commission for making the sale of bonds under the contract. The issues were joined by numerous and voluminous pleadings, but as no questions are presented resting upon the pleadings, we do not deem it necessary to set

them out even in the abstract. Upon proper request, the court made a special finding of facts, and stated its conclusions of law thereon. By its conclusions of law, the court stated that appellant was not entitled to recover. To the conclusions of law the appellant excepted.

While the assignment of errors challenges the ruling of the trial court upon the demurrers to some of the pleadings, the only question discussed is the alleged error of the court in stating its conclusions of law. The appellees have not filed a brief.

A brief statement of the facts found will suffice for a proper determination of the only question for decision. The court found that appellant negotiated a sale of the bonds within the time and upon the terms prescribed under his contract; that the purchasers were ready, willing, and able to comply with the terms of their contract of purchase, and to pay for such bonds, but that they never did pay for the same, nor tender any money, nor offer to pay for them; that the county treasurer had sold said bonds to appellees and others, as contractors, in payment at par of the contract price of constructing said roads, to be delivered as the work progressed, upon proper estimates; that $7,000 of said bonds had been delivered to appellees; that the remaining bonds were in the possession of the county treasurer; that the said bonds were never delivered to appellant, nor by him to said purchasers, nor were they ever demanded of appellees by appellant; that nothing was ever paid by said purchasers to appellees for said bonds, and no offer was ever made to pay for the same; that after such sale certain taxpayers of the county commenced an action in the circuit court of Greene county to enjoin the delivery of said bonds to appellants and all other persons claiming under them, on the ground that the alleged sale by the treasurer of said bonds to appellees was illegal and void; that appellees appeared to said action and resisted the granting of the injunction prayed for; that said court upon final hearing held said contract of sale illegal and void, and granted said injunction. Upon these facts the

court stated as a conclusion of law that appellant could not recover.

Appellant argues that he performed the service required of him under his contract, i. e., he procured a purchaser for the bonds within the time and upon the terms prescribed; that such purchaser was ready, willing, and able to purchase the same, and pay for them according to the terms of the contract. Having done this, he insists that he earned his commission, and that his right of action can not be defeated by reason of the facts that the sale of the bonds to appellees had been declared illegal and void, and their delivery perpetually enjoined by a judicial proceeding, and the further fact that no payment by reason thereof had ever been made by the purchaser to whom appellant sold. Our attention has been called by counsel in their argument to the line of authorities which declare that where an agent or a broker is employed to make a sale of real estate, or to procure for the owner a purchaser, upon prescribed terms, who is able, willing, and ready to make the purchase, and he performs the service, his right of action for his commission can not be defeated because of the failure of title in the principal. Counsel insist that the rule announced in such cases is applicable here, and is of controlling influence, on the ground that when appellant made his contract with appellees the title to the bonds was in appellees, and, since he performed the services he engaged to perform, he is entitled to recover his commission, notwithstanding the fact that by a judicial determination it was declared that the sale of the bonds to appellees by the treasurer was illegal and void. We do not think the two classes of cases are parallel, and hence the rule that controls the one does not apply to the other.

We can not believe that the decision of the question here presented hinges upon the question of title in or ownership of the bonds, but rather upon the express terms of the contract between the parties. By that contract appellant placed a limitation upon his right of recovery by agreeing that

payment for his services should be made out of the second payment made upon the sale of the bonds by the purchasers. That provision of the contract was a condition precedent to his right to recover. Suppose he had negotiated a sale of the bonds to a party who at the time was solvent and able to pay for them according to the terms of the contract; that, in pursuance to the contract, the purchaser had made the first payment; that before the second payment became due, by some sudden and unexpected financial reverses he became insolvent, and wholly unable to make the second or any of the subsequent payments, in such case, would appellees be liable to appellant for the commission? Certainly not, and plainly so, because the condition upon which he was to be paid had not been fulfilled. It is not, therefore, a question of failure of title, for it clearly appears from the record that the alleged sale of the bonds to the appellees was illegal and void, and hence the title never vested in them. It is rather a failure of a condition precedent to the appellant's right to recover. The exact question here presented has been decided in at least two states.

In the case of *McPhail* v. *Buell*, 87 Cal. 115, appellant and appellee entered into a contract by which the latter agreed to pay to the former a commission for negotiating the sale of real estate, such commission to be paid when the purchaser should pay $20,000 of the purchase money to appellee, and execute notes secured by mortgage for the residue. The sale was made, the notes and mortgage were excuted, but the purchaser failed to pay the $20,000. Upon these facts it was held that the failure of the purchaser to pay the money was a complete bar to any claim of the appellant for commissions.

In *Manton* v. *Cabot*, 4 Hun 73, 6 Thompson & Cook 203, appellant sued upon the following contract: "Mr. Joseph P. Manton. Sir: Provided you obtain for us a contract, for 600 tons more or less of horse railroad rail (said contract to be accepted by us), we hereby agree to pay you as fast as

our pay is obtained, all the price you obtain for the said iron over and above $81.50 per gross ton. Cabot & Co." Appellant obtained a contract for 600 tons of rails, more or less, at $90 per ton, "one-quarter cash, three-eighths in thirty and sixty days, interest added," with notes and satisfactory indorsements to appellees, "each lot to be settled for as delivered, on the basis of cash and time." Some 524 tons of the iron was delivered under the contract, such delivery being made from time to time, and payments made aggregating about $60 per ton. Before all the iron was delivered the purchasers failed and did not make any further payments. It was held that appellant was entitled to receive and appellee was bound to pay him as fast as their pay was received all the price obtained for the iron over and above $81.50 per gross ton. The court said: "He was entitled to nothing until defendants should receive pay from some parcel of the whole at the specified rate they were entitled to per ton. As fast as a parcel of the iron was delivered and paid for in full, plaintiff's right to the excess beyond $81.50 per ton would become complete and he could demand and was entitled to receive it, whether defendants got pay in full or not for subsequently delivered lots, but, so long as the payments made on the several invoices delivered were only of the first and second instalments of the contract * * * and there was no bad faith on the part of the defendants in the application of the moneys paid, to such instalments, the plaintiff's right was still in abeyance to await the completion of the payment on each parcel, respectively, by the purchaser. It appearing without dispute, therefore, that no amount beyond the second and first instalments on any delivery had ever been paid, and that defendants on no single ton of the iron had received $81.50, but that all beyond the first and second instalments remained unpaid, no right of action had accrued on the contract. The plaintiff's action was premature, for nothing was due him on the contract."

These cases are so strongly in point that it seems to us they

are of controlling influence here. By his contract with appellees appellant made the payment of his commission to depend upon a contingency. That contingency has not arisen, and when this suit was commenced no right of action had accrued under the contract. The trial court did not err in stating its conclusion of law. Judgment affirmed.