S. G. SNYDER, Appellee, v. W. C. FIDLER, Appellant.

Sale of land: COMMISSION: EVIDENCE. But slight evidence of the identity of the parties whose names are affixed to a contract for

the sale of land, is required to admit it for the consideration of the jury.

**Instructions:** AGENCY. In a commission action for the sale of land, where the question of plaintiff's agency for another in procuring a purchaser is an issue, failure to instruct in substance that if the agency was shown the plaintiff could not recover on his own behalf, was error.

**When agent not entitled to commission.** The making of an executory contract of sale between a purchaser and the owner of property, which is never consummated, will not entitle an agent to a commission under an agreement to produce a purchaser, unless it is affirmatively shown that the purchaser was able to perform and that failure to effect performance was caused by the default of the owner of the property.

*Appeal from Iowa District Court.*— HON. O. A. BYINGTON, Judge.

TUESDAY, OCTOBER 25, 1904.

ACTION at law to recover commissions upon the sale of a stock of merchandise. Verdict and judgment for plaintiff, and the defendant appeals.— *Reversed.*

*Popham & Havner,* for appellant.

*J. T. Beem,* for appellee.

WEAVER, J.— The petition alleges that plaintiff undertook to produce to the defendant a person who would buy for money, or in exchange for other property, a stock of merchandise then owned by the defendant of the value of $12,000, and that defendant orally undertook and agreed to pay to plaintiff a commission of two per cent. on the value of said stock on condition that plaintiff should effect a sale or exchange thereof as aforesaid. He further alleges that on the same day plaintiff did introduce to defendant one Phillips, who was willing to exchange certain real estate for said stock of goods, and thereupon defendant entered into negotiations with Phillips, and did in fact effect a sale or

exchange as contemplated, but neglects and refuses to pay the commission agreed upon. The defendant's answer is a denial of the claim stated in the petition.

I. Over the objection of the defendant the court allowed the plaintiff to introduce in evidence a document purporting to be a written agreement for the exchange of a stock of merchandise for land upon certain terms and conditions to be performed. This paper bore the signatures of " W. C. Fidler " and " Geo. Phillips." Error is assigned upon the admission of this testimony, because, it is said, there was no evidence identifying the defendant or the alleged customer produced by plaintiff as the persons who executed the writing. It is to be conceded that the proof of its due execution was of a very weak and inconclusive character, but the prevailing rule seems to be that only slight evidence of such execution is sufficient to admit the offered writing to the consideration of the jury, who then become the judges of the fact as to its genuineness. *Williams v. Keyser,* 89 Am. Dec. 243; *Sigfried v. Levan,* 9 Am. Dec. 427; *Dodge v. Bank,* 2 A. K. Marsh. 616. This is more particularly true where, as in the present case, the writing offered is not itself the basis of the action or defense, but is rather a collateral fact having a bearing upon the issue joined. *Means v. Means,* 7 Rich. Law, 533. The similarity of the names and other circumstances in evidence had some tendency to show that the signatures to the writing were those of the defendant and the alleged purchaser, and we are inclined to the view that there was no error in overruling the appellant's objection.

1. Commissions: evidence.

II. The defendant denies having agreed to pay a commission to the plaintiff. It seems that plaintiff's father was a real estate agent in the town where the defendant was then doing business. On the day of the alleged agreement plaintiff came to the store of the defendant, and informed him that Phillips was then, or had been, in his father's office, desiring to trade land for goods,

2. Instructions: agency.

and inquired what commission defendant would pay if a trade for his stock could be effected with Phillips. A conversation ensued, in which a commission of two per cent. was agreed upon, although the conditions upon which it was to be paid are in dispute. The defendant insists and testifies that in such conversation and agreement the plaintiff represented his father, and that by the terms of the agreement the commission, if earned, was to be due to the father. It will thus be seen that the question of the son's alleged agency for his father in that transaction became a material matter for the consideration of the jury.

As bearing upon that question, defendant asked the court to instruct the jury that if, in making the agreement for a commission, the plaintiff was acting for or representing his father, then plaintiff could not recover, and in such case the verdict should be for the defendant. This request was refused. The legal proposition stated in the instruction asked was clearly correct, and pertinent to the evidence before the jury, and the refusal to give it was error, unless we find the point to have been sufficiently covered in the court's charge. The charge, so far as it relates to this phase of the case, is in the following language:

The defendant, however, claims, as shown by the evidence adduced by him on the trial of this case, that the alleged parol contract was made between the father of the plaintiff and the defendant, and claims that plaintiff is not entitled to recover because he was not a party to the contract. * * * The first question for you to determine is, was the contract sued upon made between the plaintiff and the defendant or between the father of the plaintiff and the defendant? Upon this question you are instructed that the burden of proof is upon the plaintiff to establish, by a preponderance of the evidence, that said contract, whatever its terms, was made between the plaintiff and the defendant; and unless you find by such preponderance of evidence that said contract was entered into between the plaintiff and defendant you will give the case no further consideration, and your finding will be for the defendant.

To a jury of lawyers familiar with the law of agency, which is epitomized in the maxim, " *Qui facit per alium, facit per se,*" the charge above quoted might be considered sufficient, but to a jury of laymen, who are likely to give to words their popular meaning, we think an explanation in the nature of the instruction asked by the appellant should have been given. Literally speaking, the contract was shown without controversy to have been made " between the plaintiff and the defendant." The negotiation was between them alone, and the agreement, whatever it may have been, was reached between them alone; and the jury may very easily and naturally have understood from the court's instruction that, such being the testimony, they were required to find for the plaintiff on this branch of the controversy. Nowhere were they told that, although the father took no part in the making of the contract, yet if the son, in negotiating it, was his agent or representative, then the son could not recover in this action. Nowhere is the jury instructed as to the rights of the parties in the event it was found that plaintiff was acting as agent for his father, and not in his own right. To hold that the refusal to instruct the jury as requested, in the absence of some equivalent proposition in the charge of the court, was not erroneous, is to say that we may and must presume the jury were familiar with the law of agency, and required no guidance from the court in its application to the facts. This we cannot safely do. In determining disputed questions of fact juries may sometimes properly bring to their aid their acquaintance with matters of general and common knowledge, but it has never been held, so far as we are aware, that they may be left without direction to make application of a rule of law, no matter how familiar it may be. The jury should have been instructed substantially as requested by the appellant.

III.    The contract between defendant and Phillips was never carried out. The reason for this does not clearly appear, but no charge is made that the failure resulted from

the fault of defendant. The contract is executory in character, and its consummation was made to depend upon Phillips' ability to show a clear and perfect title to the land, subject to a certain mortgage, and to pay in money the difference between its agreed value and the value of the goods as the same should be shown by an inventory thereafter to be taken. There was no attempt on the trial to show that Phillips was the owner of the land, or could make good title thereto, or could pay the difference between the value of the goods and the value of the land. It was the plaintiff's theory, and the court instructed the jury, that, to recover his commissions, if the agreement therefor had been proved, plaintiff had only to show that he brought the defendant and purchaser together, and that the negotiations thus begun resulted in the written contract for the proposed exchange of the property; and the fact that such written contract had never been performed was immaterial, and would not operate to defeat plaintiff's right of recovery.

*3. WHEN AGENT NOT ENTITLED TO COMMISSION.*

The proposition of law thus stated finds more or less support in many cases, but the rule has not had the approval of this court. It is claimed that such was our holding in *Burns v. Oliphant,* 78 Iowa, 456, but that decision as since interpreted in *Greusel v. Dean,* 98 Iowa, 405, and *Fells v. Butcher,* 93 Iowa, 414, goes no farther than to hold the broker to be entitled to his commission when a purchaser produced by him enters into a contract with the owner, which the latter can, if he will, enforce according to its terms. The question now before us was directly involved in the Greusel Case, and we there held that the undertaking of a broker to effect an exchange of property was not fully performed by producing a customer with whom an executory contract of exchange was made, but never carried out, and commissions could not be collected for such services unless it was further made to appear that the failure to complete the deal was chargeable to the fault or neglect of the princi-

pal. We also there construed the Burns Case as being in harmony with this conclusion. The same construction was put upon the Burns Case in *Felts v. Butcher, supra.* In other words, the principal having obtained a valid and enforceable contract through the aid of his broker cannot arbitrarily or negligently refuse to avail himself of its benefits, and thus avoid paying the promised commission.

But the term " enforceable contract," as here employed, means something more than a contract of legal validity, the violation of which will afford a cause of action. It is a contract which can be so enforced as to give to the principal the property, or the money, or the profit, or other advantage for which he bargained. For instance, in this case the completion of the contract of exchange depended upon the ability of the man produced by plaintiff to give good title to certain land and to pay a certain sum of money. Now, if this person had no title to the land, or had not the money wherewith to make the proposed payment, or was an irresponsible adventurer, then the contract, although valid, was not enforceable, and was valueless. No exchange is thereby effected, and the condition upon which the plaintiff alleges he was to receive commissions has never been complied with. In the Greusel Case the agreement for commissions was in all essential respects parallel with the one now asserted by the plaintiff, and there, as here, the principal entered into a written contract for an exchange of property with the person (one Buckingham) introduced by the broker. The contract was never completed, it afterwards appearing that Buckingham was unable to perform the conditions on his part. In an action brought by the broker to recover commissions, the trial court instructed the jury, as was done in the present case, that with the making of the written contract of exchange the broker's undertaking was performed, and he was entitled to recover without regard to the fact that the exchange was never consummated. Upon appeal to this court we held the instruction erroneous, saying: " Plaintiff's con-

tract to dispose of the property was not executed by finding one who would enter into a contract for its purchase in the manner and on the terms agreeable to the defendant. It seems to us that the parties contemplated a completed sale and transfer of the property or the making of such a contract as was enforceable." Referring to the effect of the Burns Case, we further said: "If Buckingham· had been ready, able, and willing to have completed the sale, or if the contract entered into between him and the defendant could have been enforced, then a failure.to complete the sale would not have deprived the plaintiff of his commission; and it may be that such would· be the case though Buckingham was not willing to complete the sale if the situation was such that the contract could have been enforced as against him." It has sometimes been held that in an action by a broker for his commissions on a sale which has not been consummated by an actual transfer of title or property it will be presumed that the purchaser produced by the broker was financially able to complete the purchase. *McFarland v. Lillard,* 2 Ind. App. 160 (28 N. E. Rep. 229, 50 Am. St. Rep. 234); *Grosse v. Cooley,* 43 Minn. 188 (45 N. W. Rep. 15). But the rule in this State and in most States is otherwise, and the burden is upon the broker to show that the purchaser whom he claims to have produced was able, as well as ready and willing, to complete the purchase upon the prescribed terms. *Dent v. Powell,* 93 Iowa, 711; *Iselin v. Griffith,* 62 Iowa, 668. This rule is based upon the thought that it is a part of the broker's implied undertaking that he will produce a customer of the requisite financial ability, and upon the further thought that the broker ought to know the qualification of the person whom he presents to his principal and with whom he asks the principal to deal. *Leahy v. Hair,* 33 Ill. App. 461; *Butler v. Baker,* 17 R. I. 582 (23 Atl. Rep. 1019, 33 Am. St. Rep. 897). In the last-cited case the court states the question before it to be "whether it is enough, to entitle a broker to his commission, that he has produced a person as

a purchaser who is ready and willing to purchase upon the seller's terms, and a contract has been entered into to that effect between the seller and the person produced, or whether it must also appear that the person produced is of sufficient pecuniary ability to make the purchase. The plaintiff contends that the signing of the receipt setting forth the terms and contract of sale was an acceptance of Bronson as a purchaser, and that he thereby became entitled to his commission, his contract having then been completed, without reference to Bronson's ability to perform the contract of purchase."

As will be seen, this is precisely the doctrine of the instructions given in the present case by the court below, and for the correctness of which the appellee now argues. To the proposition thus stated the Rhode Island court answers: "We do not assent to this position. The production of a person as a purchaser was an implied representation by the plaintiff to the defendant that Bronson was able financially, as well as ready and willing, to perform the contract of purchase." The same opinion quotes approvingly from our own decision in *Iselin v. Griffith, supra,* and notes it among the cases holding that the burden is upon the broker in such cases to allege and prove the financial ability of the purchaser to carry out his contract as a necessary basis for the recovery of commissions. Speaking to the precise point which we are now considering the Maryland court says that: "A broker employed to sell real estate must produce a person who ultimately becomes a purchaser before he is entitled to his commissions. It is not sufficient that he should enter into an agreement to purchase, but he must actually purchase by complying with the terms agreed upon, unless his failure to do so is occasioned by the fault of the vendor." *Richards v. Jackson,* 31 Md. 250 (1 Am. Rep. 49); *Kimberly v. Henderson,* 29 Md. 512. The recent case of *Marple v. Ives,* 111 Iowa, 603, is in its main features very similar to the one at bar. Marple, a broker, acting for Ives, the owner of a stock of goods, negotiated an exchange of said stock with King for

a tract of land and a payment of $800 in cash or good notes. A written contract (by letter) was entered into between Ives and King, which stipulated, among other conditions, that an abstract should be furnished showing the title to the land to be clear. King was shown to be ready, able, and willing to complete the purchase according to the agreement, except that he did not furnish or offer the required abstract of title; or at least the record which was before us in the appeal did not disclose such act on his part. We therefore held that no showing had been made which would entitle the broker to commissions.

We think it unnecessary to further pursue the discussion. Enough has been said to demonstrate that under our prior holdings the trial court erred in instructing the jury that, upon the making of the written contract between the defendant and Phillips, plaintiff became entitled to commissions as a matter of law, without regard to the fact whether the exchange was ever consummated. As bearing upon the general proposition, and sustaining with more or less directness the conclusion to which we have arrived, see *Dorrington v. Powell,* 52 Neb. 440 (72 N. W. Rep. 587); *Norman v. Reuther,* 25 Misc. Rep. 163 (54 N. Y. Supp. 152); *Parmly v. Head,* 33 Ill. App. 134; *Zeidler v. Walker,* 41 Mo. App. 121; *Condict v. Cowdrey,* 139 N. Y. 273 (34 N. E. Rep. 781); *Sullivan v. Milliken,* 113 Fed. Rep. 93 (51 C. C. A. 79); *Hammond v. Crawford,* 66 Fed. Rep. 425 (14 C. C. A. 109); *Beale v. Bard,* 84 Law T. 313; *Cook v. Forst,* 116 Ala. 395 (22 South. Rep. 540); *Wooley v. Lowenstein,* 83 Hun, 155 (31 N. Y. Supp. 570); *Siemssen v. Homan,* 35 Neb. 892 (53 N. W. Rep. 1012); *Walsh v. Gay* (Sup.), 63 N. Y. Supp. 543; *De Santos v. Taney,* 13 La Ann. 151; *Pratt v. Hotchkiss,* 10 Ill. App. 603; *Parmly v. Farrar,* 169 Ill. 606 (48 N. E. Rep. 693); *Richards v. Jackson,* 31 Md. 250 (1 Am. Rep. 49); *Kimberly v. Henderson,* 29 Md. 512.

Other questions argued' are such as are not likely to arise upon a retrial of the case.

For the reasons we have stated, the judgment of the district court is *reversed.*