EDWARD THOMPSON, Appellee, v. J. J. RYAN, Appellant.

**BROKERS:** Commission Payable in "Securities"—Failure to Consummate Contract. A broker who, for effecting a sale for his principal, agrees to accept as commission a certain amount of "securities" which the principal is to receive from the other party to the sale, is not entitled to·a money judgment against his principal for his commission, when such principal is in no wise to blame for the nonconsummation of the sale contract. In other words, the broker in such circumstances does not earn his commission until a sale is *actually effected*—until the "securities" are delivered to the principal.

**BROKERS:** Fraud as Defense Against Commission. A broker may be entitled to his commission from his principal, even though the contract of sale was never carried out by the parties; but not so when the principal has been led into the contract by his broker's fraud. Evidence held to demand the submission of such issue of fraud.

*Appeal from Webster District Court.—*H. E. FRY, Judge.

SEPTEMBER 26, 1919.

SUPPLEMENTAL OPINION ON REHEARING, FEBRUARY 16, 1920.

ACTION at law to recover a commission on the sale or exchange of real property. There was a trial to a jury, and

a verdict and judgment for plaintiff, and the defendant appeals. The plaintiff has also appealed from the action of the trial court in instructing the jury to allow interest, in case of recovery, from the commencement of the suit, instead of from the date plaintiff claims his service was completed. —*Reversed on both appeals.*

*Mitchell & Files,* for appellant.

*H. W. Stowe* and *Hunn & Jones,* for appellee.

PRESTON, J.—1. Defendant, having first appealed, is the appellant. Numerous errors are assigned by appellant for reversal, and points by appellee for affirmance. There is one thing about the record that strikes us as peculiar, and that is that appellee does not argue at all the question of fraud argued by appellant. The question of fraud or representation was tendered in the pleadings, but withdrawn or ignored by the court in the instructions. Nor does appellant argue at all the question of interest, which is presented by plaintiff on his appeal; so that we shall have to get at these questions the best we can, with argument on only one side.

1. BROKERS: commission payable in "securities:" failure to consummate contract.

Plaintiff is a real estate broker. Some time prior to October 11, 1912, defendant had purchased the 570 acres of land he now owns, and in dispute in this case, and in that transaction the plaintiff had been interested, as broker in that sale, and claimed to be entitled to a commission from the party who then sold the land to defendant; and plaintiff had brought some kind of an action to establish a lien on the land. That suit was pending when the contract soon to be referred to was entered into between plaintiff and defendant. Prior to the execution of this contract, there seems to have been an understanding between plaintiff and defendant, by which plaintiff had undertaken to make a sale for defendant, of defendant's land in dispute, to Mrs.

Saucerman, and under which plaintiff claims to have performed, and put in his time in bringing about the trade.

On October 11, 1912, plaintiff and defendant entered into the following contract:

"Des Moines, Iowa, October 11, 1912. It is hereby agreed and has heretofore been agreed and understood that if the deal or trade is made by J. J. Ryan of Fort Dodge, Iowa, and Mrs. F. Saucerman of Des Moines, Iowa, I hereby agree to pay to Edward Thompson of Callendar, Iowa, the sum of $3,000 for acting as my agent in the matter and the said Edward Thompson is to accept securities for same that I receive of Mrs. F. Saucerman. It is agreed Edward Thompson will dismiss suit affecting title of the land trade. Signed in duplicate, J. J. Ryan, Edward Thompson."

After this agreement, the plaintiff dismissed the suit that was then pending. A month or more after this contract, the defendant and Mrs. Saucerman, an old lady, about 75 years of age, who died some time in 1913, entered into a written contract as follows:

"Exhibit No. 1. This agreement made this 9th day of November, 1912, between J. J. Ryan of the county of Webster, state of Iowa, party of the first part and Mariam Saucerman of the county of Polk and state of Iowa party of the second part as follows:

"The party of the first part hereby sells to the party of the second part on the performance of the agreements of the party of the second part as hereinafter mentioned, all his right, title and interest in and to the real estate situated in the county of Palo Alto and state of Iowa, to wit: [describing defendant's 569.81 acres in Palo Alto County.]

"And the party of the second part in consideration of the premises hereby agrees to and with the party of the first part, to purchase all his right, title and interest in and to the real estate above described, situated in the county of Palo Alto and state of Iowa, and to pay and exchange there-

for and sell and convey to the party of the first part the following described premises situated in the county of Polk and state of Iowa, a more particular description of which is hereafter set out marked Exhibit A and made a part of this contract.

"In addition to the conveyance of the land described in Exhibit A the party of the second part agrees to pay to the party of the first part the sum of seven thousand five hundred ($7,500) dollars in good securities, consisting of mortgages and real estate contracts in force where equities are amply good. Each party to assume and pay the incumbrance upon the land received by him or her, but any difference in the amount of incumbrance is to be made up by either an increase or decrease of negotiable securities above described."

Exhibit A, attached to that contract, contains a list of a large number of lots and parcels of land, 30 or 40 or more. This contract is dated November 9, 1912, but was not signed at that time, but was signed at a later date. This contract was drawn by Mr. Sullivan, and plaintiff, defendant, Mrs. Saucerman, and her daughter, or granddaughter, and her attorney, Steele, were present. It is conceded that this contract between defendant and Mrs. Saucerman was never performed. The defendant had made at least some examination of Mrs. Saucerman's property, and, as we gather, this was before the last-named contract was signed; and Mrs. Saucerman had employed an attorney to assist her, but perhaps more with reference to the condition of her own affairs. The $7,500 securities that Mrs. Saucerman was to turn over to defendant might, according to the contract, be increased or decreased, according to the amount of incumbrance on her properties. It appears that, upon investigating the incumbrances, it was found that she would have to turn over to appellant about $12,000 in securities, to make up the difference, and that, to release these securities, she

would have to put up to the Loan and Trust Company more than $10,000; so that, as contended by appellant, and as testified to by Mrs. Saucerman's attorney, Mr. Steele, figuring it that way, it would take about $20,000 for her to make the deal.    The securities were not released nor turned over, nor offered to be turned over to appellant.    Exhibit 1 provides that abstract shall be furnished.    After the contract, appellant had abstracts perfected to his land, and tendered the same to Mrs. Saucerman; but he never received an abstract to any of the Saucerman property, though he demanded the same from her and plaintiff,—at least, the evidence tends to so show.    In January, 1913, Mrs. Saucerman sold a part of the property covered by Exhibit 1, and, in February, sold several other parcels; and, as appellant contends, she put it out of her power to carry out or perform her contract.    The trial court submitted the case to the jury on the theory that the jury should determine whether the defendant or Mrs. Saucerman was to blame for the nonperformance of the contract, Exhibit 1, and some of the terms and conditions thereof.    Plaintiff alleged, among other things, that Mrs. Saucerman was ready, able, and willing to perform her part of it; but, as we understand appellee now, his contention is that some of these allegations were surplusage, and he was not required to prove them,—at least, that he was only required to make out a prima-facie case. The trial court instructed on these several matters, and the instructions, or some of them, are complained of.    Appellant contends, also, that some of the instructions given by the court had no support in the evidence, and that they were, therefore, erroneously given, and that there were some material issues in the case, and evidence to support them, which were not submitted to the jury, and that this was error.    In our view of the case, some of these matters are not controlling.    The real controversy in the case, we take it, in so far as it refers to the issues that were submitted to

the jury, is in regard to the question as to what the plaintiff, under the contract between himself and defendant, was required to do, and when his commission was earned. Appellant contends that the trial court adopted the wrong theory in regard to this, and his claim is, substantially, stated as briefly as we may, that, before a broker is entitled to commission for sale or exchange of property, a binding contract must be made, and the purchaser must be ready, able, and willing to carry out the terms thereof (citing *Greusel v. Dean*, 98 Iowa 405; *Nagl v. Small*, 159 Iowa 387, 390; *Ketcham v. Axelson*, 160 Iowa 456, 458, 471; *Beamer v. Stuber*, 164 Iowa 309, 311, 312; *Flynn v. Jordal*, 124 Iowa 457; *Snyder v. Fidler*, 125 Iowa 378; *Jones v. Ford*, 154 Iowa 549, 554) ; and that, where there is something to be done by the purchaser or by the other party to the contract, such as the execution of notes, turning over of securities, or furnishing of an abstract, the contract is not completed and enforcible until such act is performed, and such condition complied with (citing the *Ketcham* and *Snyder* cases, supra, and *Marple v. Ives*, 111 Iowa 602, 604). Appellee concedes that this is the rule in certain cases, but contends that it does not apply to the kind of a contract which was entered into between plaintiff and defendant. In the *Greusel* case, the commission was due whenever plaintiff should succeed in disposing of the property in the manner and on the terms acceptable to the defendant, and it appeared that plaintiff brought a party to defendant who agreed to and did purchase said goods, on terms acceptable to the defendant. The plaintiff in that case, the broker, was to dispose of the property in the manner or on terms acceptable to defendant. The contract was not performed, nor the property disposed of; and, under such a contract, it was held that plaintiff was required to find a purchaser who was able and willing to make the purchase and complete the contract. The *Nagl* case is relied on by appellee, and will be referred to later. The

*Ketcham, Flynn,* and *Snyder* cases are also relied upon by appellee, and will be referred to later. In the *Beamer* case, the question was whether plaintiff was to find a purchaser; and the holding was that this duty is performed when the agent finds and introduces to his principal a person who is ready, able, and willing to buy on the terms proposed by or acceptable to said principal,—a different contract, we think, from that presented in the instant case. In the *Jones* case, the broker was to procure a purchaser ready, able, and willing to buy on terms satisfactory to the seller; and it was held that the evidence was sufficient to sustain the finding that the broker did secure a purchaser who was ready, able, and willing to comply with the conditions.

On the other hand, appellee contends that where, as here, the plaintiff was required to do the things specified in his contract, and the property owners have entered into a binding contract, then his commission is due: in other words, that, under his contract, the deal or trade is made when there is a binding contract between the two property owners. He cites and relies on *Wenks v. Hazard,* 149 Iowa 16; *Nagl v. Small,* supra; *Flynn v. Jordal,* supra; *Ketcham v. Axelson,* supra. Appellee also relies on the case of *Laubscher v. Mixell,* 171 Iowa 88, as holding that, to be entitled to a commission where no completed transfer is made, a broker employed must find a purchaser, or one who will trade upon terms fixed by the principal, or take from the customer a binding contract of purchase or trade, acceptable to the principal. In the *Wenks* case, the court, after stating that there was more or less confusion in the cases, said:

"This is not a case where the commission was to become due upon a completed sale. Nor is it a case where the terms and conditions of the sale were fixed in advance by the owner, and he agreed to pay a commission when a purchaser on the terms stated was produced. Where the

commission depends upon a consummated sale, the burden rests upon the plaintiff to show that the purchaser was able and willing to perform, and that the owner was at fault. And the same rule applies where the terms are fixed in advance by the owner, and the agent claims to have procured a purchaser upon the terms stated. The case at bar belongs to still another class, in our judgment. Here, the terms of sale were not fixed in advance by the owner, and therefore it was impossible for the plaintiff to know what they were or might be. The terms and conditions of the sale being expressly reserved for determination by the owner, it is manifest that the agent or broker cannot know whether the purchaser can or will accede to the terms fixed. The owner reserves the right to and determines the ability of the purchaser to pay, or to comply with other terms which he may fix; and it would be manifestly unjust to say to the broker that his commission must depend upon the correctness of the owner's judgment or ability."

After reviewing a number of decisions, the court said further:

"In none of the cases, so far as we have been able to find, has it been held that there can be no recovery where the owner reserves the right to fix his own terms and conditions, and agrees to pay a commission for a purchaser who will enter into such a contract as he shall dictate."

It may be conceded that the contract in the instant case is not in the precise language of the cases cited by appellee. We shall not stop to review them, but say that we think the contract in question comes more nearly within the rule laid down in such cases.

2. Conceding this to be the proper rule, as applied to the contract in this case, it is important to determine whether the contract between Mrs. Saucerman and the appellant

was made in good faith, or whether it was
2. Brokers: fraud obtained by fraud and misrepresenta-
as defense
against com- tion by the plaintiff. Such is appellant's
mission.
contention. He assigns as error that the
court erred in the first instruction, in that said instruction
withdraws from the jury material and proper matter plead-
ed by defendant in his answer, to wit, the fraud of plain-
tiff in procuring defendant's signature to the contract, Ex-
hibit 1, and the failure to furnish abstracts, as agreed in
said contract; and that said instruction does not clearly
state the issues. The question of the alleged fraud was not
submitted to the jury, but was expressly withdrawn, on
the ground that the evidence in relation thereto was insuffi-
cient to submit to the jury; and, as we have said, it is not
argued by appellee. We are, therefore, not advised what
appellee's theory is, nor that of the trial court, at this point;
but we reach the conclusion that there is merit in this as-
signment, and that appellant's contention must be sustained.
It should be kept in mind that there was some little time
after the preparation of Exhibit 1, before it was signed.
The defendant testified that Mrs. Saucerman came to see
him at Fort Dodge, between the time the contract was writ-
ten and the time it was signed; but this was stricken, on
plaintiff's motion, and defendant was then asked to state the
conversation, and objection to this was sustained. There-
upon, appellant offered to prove:

"The defendant proposes to prove by this witness that,
subsequent to the writing of the contract, and before it was
signed, Mrs. Saucerman called at his home, and stated to
him that it was not possible for her to raise the money to
release the securities which, according to the terms of the
contract, as written, she was to turn over to the defendant,
unless she could raise about $12,000 or more for that pur-
pose; that, unless she could make that loan, or it could be
made for her, she was unable to perform the contract."

This offer was denied. In view of what follows, we think the witness should have been permitted to testify to the matter contained in the offer. The defendant, in his answer, pleaded the following:

"Defendant further states and shows to the court that Mrs. Saucerman was a stranger to this defendant, and that he knew nothing about her financial responsibility or her ability to carry out and perform the terms of said contract; that plaintiff claimed and pretended to be well acquainted with said Mrs. Saucerman, and to have knowledge of the property owned by her, and of her ability to perform and carry out said contract; that, at the time defendant signed said contract, he did so upon the representation orally made to him by plaintiff that Mrs. Saucerman would be able to raise money to release the securities referred to in said contract, and which securities had, previous to that time, been pledged by Mrs. Saucerman. Plaintiff also, at said time, represented to defendant that said securities, when so released, would be turned over to defendant, and that Mrs. Saucerman was in a position to carry out and perform the terms of said contract, Exhibit 1. That, relying on the representations of plaintiff, and believing that the same were true, which belief was founded on the statements and representations made by plaintiff, defendant signed said contract. Defendant now states that said representations were false; that plaintiff knew, or should have known, that the same were false, at the time he made them to defendant; and that said representations were made for the purpose of deceiving this defendant, and of inducing him to sign said contract."

The defendant, as a witness, testified that plaintiff called upon him, after Mrs. Saucerman came to see him, and before Exhibit 1 was signed, and that he had a talk at that time with plaintiff about Mrs. Saucerman's ability to carry out the contract. He says:

"I told him that Mrs. Saucerman and her granddaughter were at my home, a short time before, and wanted me to make a loan of $12,000 with which to release their securities, and that I refused to do it. He said that he had made arrangements with the Bankers Life Insurance Company to make that loan, by increasing the mortgage on the Palo Alto County land. He was to get part of it by loan with the Bankers Life, and that he could get the balance from friends in Chicago. He asked me if I would be willing to sign an application on the Palo Alto County land, in order to enable Mrs. Saucerman to get the money to release the securities. I told him I would; but I also told him, at the time he was insisting that I sign the contract, of my doubts of Mrs. Saucerman being able to meet it, and that I didn't want to get into any law suit. He said: 'There will be no law suit about it.' When I signed the contract, I signed it relying upon Mr. Thompson's statement that he had arranged with the Bankers Life Insurance Company to make the loan for a part of the money, and that he would get the balance from his relatives. I relied upon that statement absolutely. I knew not a thing concerning the financial responsibility of Mrs. Saucerman."

The defendant did sign an application for a loan with the Bankers Life, but it was refused. The plaintiff had not arranged for the loan. He did prepare an application therefor. As said, this was before Exhibit 1 was signed; and the defendant set out in his answer, and testified, that he signed the Saucerman contract, relying on such representation. The defendant's evidence, before set out, went in without objection, and there was no objection by plaintiff to the sufficiency of the defendant's answer in regard to the alleged fraud, and no question of that kind is made in this court. It must be conceded that the pleading is not as definite as the defendant's evidence. It may be that the trial court's theory as to this was that the alleged representa-

tions that Mrs. Saucerman would be able to raise money to release the securities, and that, when said securities were released, they would be turned over to the defendant, were matters of opinion, and this may be so; but there is the further statement that it was represented that Mrs. Saucerman was in a position to carry out and perform the terms of said contract. Doubtless, the theory of the pleader was that she would be able to do this if plaintiff arranged for the loan she was trying to get, in order that she might pay the $12,000. His statement that he had arranged for the loan clearly would be the statement of a fact. Under the entire record, we think such should be the construction of the pleadings. If, then, the defendant's signature was thereafter obtained by such false representation, made by the plaintiff, there would be no binding contract between Mrs. Saucerman and defendant; and, in that case, the plaintiff would not have performed his contract with the defendant. We think the trial court erred in withdrawing this issue from the jury.

Other questions are argued, in regard to supposed error in some of the instructions and in rulings on evidence; but they are such as that they are not likely to occur on a retrial of the case, since it will doubtless be tried on a somewhat different theory.

3. Since we hold that, under the contract, plaintiff was entitled to his commission when a valid contract was signed between the property owners, we think he would be entitled to interest from the date of the actual signing or execution of the contract, if it should be found that there was such a binding, enforcible contract made. And we think the court erred in allowing interest only from the commencement of the suit. Because of the reversal of the case on appellant's appeal, it may be that we are not required to pass upon this question, but have concluded to say this much, in view of a new trial. The cost of appellee's additional abstract

and argument on this question of interest will be taxed to
appellant.   For the reasons given, the cause is—*Reversed
and remanded.*

LADD, C. J., EVANS and SALINGER, JJ., concur.

SUPPLEMENTAL OPINION ON REHEARING.

The reversing opinion in this case, on defendant's ap-
peal, was made to turn on the error of the trial court in fail-
ing to submit to the jury the question of fraud.   The cases
were reviewed, to some extent, as to the

3. BROKERS : com-
mission paya-
ble in "se-
curities :"
failure to con-
summate con-
tract.

character of the contract, and the state-
ment was made in the opinion, just before
Paragraph 2:

"We shall not stop to review them, but
say that we think the contract in question comes more near-
ly within the rule laid down in such cases."

A majority of the court are now of opinion that such
statement is not correct.   The statement just quoted is,
therefore, withdrawn.   The writer of the opinion still thinks
that the statement is correct, unless a different rule applies
because of the provision in the contract between plaintiff and
defendant which reads: "And the said Edward Thompson is
to accept securities for same that I receive of Mrs. F. Sau-
cerman."   That question was not discussed in the original
opinion.   Though the contract between Ryan and Saucer-
man, on the face of it, was executed, it is conceded that it
was not consummated by them by an exchange of proper-
ties, and that no securities were received by Ryan from Mrs.
Saucerman.   If it should be found, as claimed by defend-
ant, that the contract was obtained by fraud, there would,
of course, be no contract at all.   If it should be found that
the contract was not obtained by fraud. then the question
is whether plaintiff would, in any event, be entitled to a
money judgment, or whether he would only be entitled to

a commission, if at all, out of the securities which Ryan
receives of Mrs. Saucerman.   Had the securities been turned
over to Ryan, and he had refused to allow plaintiff his com-
mission out of the securities, we would have a different
proposition.   But, under the contract and evidence in this
case, we are of opinion, and hold, that, even though the con-
tract was executed without fraud, a proper construction of
it is that plaintiff is not entitled to a money judgment, but
is only entitled to his commission, if at all, out of a spe-
cific fund: that is, out of the securities that Ryan should
receive from Mrs. Saucerman.   Plaintiff framed his cause
of action on the theory that the appellant, Ryan, was wholly
at fault, and that the customer, Mrs. Saucerman, was not at
fault, but was ready, able, and willing to complete her con-
tract.   But the evidence shows that appellant, Ryan, was
not at fault, and was ready, able, and willing to perform his
part of the contract with Mrs. Saucerman, and that she
could not perform her part.   She had placed it beyond her
power to convey the property.   Plaintiff was well acquainted
with Mrs. Saucerman and her property and her affairs, and
was a lodger in her home.   It was competent for plaintiff to
provide in his contract that the commission should be pay-
able out of a specific fund, or securities, to be received by
Ryan from Mrs. Saucerman; and, in that case, he would not
be entitled to a commission except out of the securities, un-
less it should appear that the principal, Ryan, was at fault.
We think the contemplation of the parties was that plaintiff
should receive his commission out of the securities.

Ormsby v. Graham, 123 Iowa 202, 213, 215, was an ac-
tion for specific performance, in which the agent was made
defendant, and he, by cross-petition, asked judgment for
his commission.   The contract provided, in substance, that
the agent was to use all proper efforts to sell, upon the
stated terms and conditions, to draw all papers necessary to
consummate the sale, and to pay over the cash payment re-

ceived, less commission and expenses. The owners, on their part, were to execute and deliver a deed when the land was sold, and to allow the agent the stipulated "commission, to be retained in full out of the cash payment," or, "if the payment does not pass through the agent's hands, then appellants are to pay the commission directly." The contract in that case is not precisely like the one in the instant case, in that, in this case, there is no provision in the contract that the owner is to pay the commission directly, if the cash payment does not pass through the agent's hands. The other provision in each is somewhat similar. There, he was to retain his commission out of the cash payment. In the instant case, the contract provides that Thompson is to accept securities for his commission that are received from Mrs. Saucerman. In the *Ormsby* case, the different rules are stated, as applied to different contracts; and it was held that the agent's action was based upon a special contract of agency to sell. That a completed sale, as a basis for the recovery of commissions, was contemplated by the parties, was shown in the stipulation, which authorizes the agent to retain his compensation from the first cash installment, from the price for which the property might be sold. The opinion refers to a similar case in *Cremer v. Miller,* 56 Minn. 52, where the commission was to be the excess obtained over a fixed net price. It was there held that a sale should be consummated, before an action by the agent could be sustained. In the *Ormsby* case, other reasons were given for not allowing the commission, but they do not bear so strongly on the question now before us as the one we have given.

*Robertson v. Vasey,* 125 Iowa 526, is somewhat similar to this. In that case, the contract was construed to mean that payment of the agent's commission was dependent upon the payment of the purchase price of the land, and that the commission and land contracts should be construed together, so far as they relate to the purchase price. As bear-

ing upon this question, appellant cites, also, *Columbia Realty Inv. Co. v. Alameda Land Co.*, 87 Ore. 277 (168 Pac. 64); *Owen v. Ramsey*, 23 Ind. App. 285 (55 N. E. 247); *Manton v. Cabot*, 4 Hun (N. Y.) 73; *McPhail v. Buell*, 87 Cal. 115 (25 Pac. 266); *Campbell v. Cove Ranch L. & L. Co.*, 28 Ida. 445 (155 Pac. 662); *Wilson v. Rafter*, 188 Mo. App. 356 (174 S. W. 137); *Lindley v. Fay*, 119 Cal. 239 (51 Pac. 333); *Roach v. McDonald*, 187 Ala. 64 (65 So. 823).

We shall not take the space or time to refer further to such cases. What has been said herein qualifies in like manner the last paragraph of the opinion in regard to interest. Interest would not be allowed, in any event, unless the securities were received. As modified by this supplement, the original opinion will stand, and the petition for rehearing is overruled.

WEAVER, C. J., LADD, EVANS, and SALINGER, JJ., concur.